SAUNDERS, Judge.
Defendants, Merk and Louetta Gaspard, husband and wife, were charged with bill of information with the offense of resisting an officer in violation of LSA-R.S. 14:108. Defendants filed a motion to quash the information. A contradictory hearing was conducted after which the trial court denied defendants’ *369 motion. The trial court found the defendants guilty as charged. Louetta Gaspard was sentenced to a fine of $250.00 and Merk Gaspard was sentenced to a six month jail term, three months of which were suspended.
Immediately following the conviction, a contradictory hearing was held on Merk Gas-pard’s motion to dismiss probation revocation hearing, after which the trial court denied the defendants’ motion.
On February 25, 1993, this court denied defendants’ application for a writ of review and request for a stay of execution of their sentences. See State v. Merk and Louetta Gaspard, unpublished writ bearing docket number K93-173 (La.App. 3d Cir., February 25, 1993). Defendants then applied to the Louisiana Supreme Court for writs. The Louisiana Supreme Court issued a stay of all proceedings, and then subsequently granted defendants’ writ and remanded the case to us for briefing, argument, and an opinion, 616 So.2d 708, which we now render. After our review of the evidence, we find that there was insufficient evidence to convict defendants of the charged offense and hereby reverse defendants’ convictions and vacate their sentences.

FACTS

The essential facts are as follows. On January 9, 1993, Deputy Scott Smith of the Avoyelles Parish Sheriffs Department, armed with an arrest warrant, went to defendants’ residence to arrest their son, Faron Gaspard. Upon arriving at the Gaspard residence, Deputy Smith thought he recognized Faron under the carport of the residence. Deputy Smith then approached the house and knocked on the glass door through which he saw defendant, Louetta Gaspard. Smith informed Mrs. Gaspard that he wanted to “talk” to Faron, whom he had seen going into the house. Mrs. Gaspard told Smith that “Faron’s not here; he’s in Texas.” She then told Smith that he could talk to her husband, Merk Gaspard, who was in the yard.
At this point, Mr. Gaspard came upon Smith who told him that he had some papers to serve on Faron. Mr. Gaspard also told Smith that Faron was in Texas. When told by Smith that he had observed Faron under the carport and that Faron had walked into the house, Mr. Gaspard stated that the individual observed by Smith was probably his 12 year old grandson. Smith described the person he saw as a 30 year old man, six feet tall, with a beard; mustache, and long hair. Smith asked permission to enter the house, but Mr. Gaspard refused to allow Smith to enter without a search warrant. Smith radioed for assistance, and Mr. Gaspard entered the house.
Lt. Patterson arrived on the scene within minutes of being called and Smith advised him of the events which had occurred. It was not until this point that Lt. Patterson advised Mr. Gaspard that they had an arrest warrant for Faron and that Smith had observed a “subject, believed to be Faron Gas-pard” enter their residence. Mr. Gaspard told Patterson that Faron was in Texas and the person seen by Smith was his grandson. Patterson requested that the grandson be brought outside for Deputy Smith to make an identification, but Mr. Gaspard refused. Mr. Gaspard then told the officers that they could enter the house.
At this time, Patterson remembered that upon driving up to the Gaspard residence he had seen a window screen lying on the ground on the opposite side of the house and the officers concluded that Faron had escaped through this window and left the residence. Faron was arrested later that afternoon in a field two miles from the Gaspard residence. Defendants, Merk and Louetta Gaspard, were subsequently arrested and charged with violating LSA-R.S. 14:108 as a result of these events.

ASSIGNMENTS OF ERROR

Defendants contend that there was insufficient evidence to convict and that the trial court, therefore, improperly denied their motion to quash and Merk Gaspard’s motion to dismiss probation revocation hearing.

LAW

In their original writ application, defendants raised ' four assignments of error. They alleged that the trial court erred in denying their motion to quash the bill of *370 information, in denying Mr. Gaspard’s motion to dismiss his probation revocation proceeding, and in convicting them of the charged offense. These assignments are based on an allegation of insufficiency of the evidence. Defendants’ fourth assignment requested a stay of execution of their sentences, which the Supreme Court granted and which is now moot.
When the issue of sufficiency of the evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It is the role of the fact finder to weigh the respective credi-bilities of the witnesses; therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983).
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. The offense of resisting an officer is found at LSA-R.S. 14:108, which provides in pertinent part:
A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity.
In finding that there was sufficient evidence to convict defendants of the charged offense, the trial judge stated:
“The Court finds the circumstances are sufficient and convinces me that it would be a flight of fantasy to believe that these two people, these parents, did not know Mr. Faron Gaspard was present. I think that they deliberately concealed his presence, they knew that these officers were in their official capacity attempting at the very least to serve order of processes and they did things to hinder that by misrepresenting his presence or absence long enough so that he could attempt to effectuate an escape from that situation. I think they are GUILTY of the offense charged, and will so rule.”

DISCUSSION

Insofar as we reverse the convictions of the defendants based upon factual scenarios individual to each, we will discuss the facts and events surrounding the alleged offenses of each defendant separately.

A. Louetta Gaspard:

While there is some confusion in the record as to the exact time when the Gas-pards were informed about the arrest warrant or that Deputy Smith “had some papers to serve” on Faron, Deputy Smith testified numerous times that when he knocked on the door to speak with Mrs. Gaspard about Faron, he told her that he had “something to talk to him about.” He further testified that when he spoke to Mr. Gaspard about Faron and told Mr. Gaspard that he had “some papers for him,” Mrs. Gaspard was in the house and was not present during this conversation.
“Q. Was Ms. Lou Gaspard also in the presence of Mr. Gaspard when this was being said?
A. No she was in the house.”
In an attempt to clarify this point, defense counsel solicited the following colloquy:
“Q. O.K. And when you said you had some papers can you be more specific
[[Image here]]
BY MR. ROY:
.... Your Honor, I object to the leading question. He never said he had papers. He said specifically go get Far-on I have something to talk to him about.
A. I told that to Ms. Lou.
BY MR. ROY:
Yeah, that’s okay.
A. But I’m talking about Mr. Merk, I told Mr. Merk I had papers.”
*371 It becomes clear from the testimony of Smith at both the hearing on the motion to quash and the trial, that Mrs. Gaspard was only told that Smith needed to talk with Faron and at no time was an arrest warrant or service of papers ever mentioned to Mrs. Gaspard or in her presence. All Mrs. Gas-pard was told was that Deputy Smith “had something to talk to him [Faron] about.” Therefore, an essential element of the crime of resisting an officer was not proven, i.e. “the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest ... or to serve any lawful process ... when the offender knows or has reason to know that the person arresting, ..., or serving process is acting in his official capacity.” LSA-R.S. 14:108. No mention of an arrest warrant or service of process was made to Mrs. Gas-pard. Therefore, the words by Mrs. Gaspard to the effect that “Faron’s not here, he’s in Texas” did not constitute the crime of resisting an officer.
In State v. Nix, 406 So.2d 1355 (La.1981), the Louisiana Supreme Court, in discussing LSA-R.S. 14:108, stated as follows:
“Jurisprudence construing this enactment has repeatedly rejected the motion that interference with an officer’s investigation is sufficient to establish the offense of resisting an officer. State v. Lindsay, 388 So.2d 781 (La.1980); State v. Grogan, 373 So.2d 1300 (La.1979); State v. Huguet, 369 So.2d 1331 (La.1979). Rather, this Court has interpreted R.S. 14:108 as prohibiting conduct which obstructs officers “acting in their official capacity, while attempting to seize property, serve process or arrest....” State v. Huguet, supra, 369 So.2d at 1335.”
Id. at page 1356.
Prior to Nix, supra, the Louisiana Supreme Court in State v. Lindsay, 388 So.2d 781 (La.1980), in explaining these provisions, stated:
“In State v. Huguet, 369 So.2d 1331 (La. 1979), we rejected the contention that interference with an officer’s investigation is a violation of R.S. 14:108, resisting an officer. See also State v. Grogan, 373 So.2d 1300 (La.1979). We interpreted R.S. 14:108 as prohibiting conduct which obstructs officers “acting in their official capacity, while attempting to seize property, serve process or arrest ...” If the officer is not engaged in attempting one of those three things, then a defendant who opposes him cannot be considered guilty of resisting an officer.”
Id. at page 783. (Emphasis added.)
More recently, in Brumfield v. Jones, 849 F.2d 152 (5th Cir.1988), the United States Fifth Circuit Court of Appeal, reiterated this interpretation, stating:
“Under dispositive Louisiana jurisprudence, interference with an investigation alone does not constitute interference with an officer in the course of an arrest. See State v. Nix, 406 So.2d 1355 (La.1981); State v. Lindsay, 388 So.2d 781 (La.1980).”
Id. at page 155.
It is abundantly clear that Mrs. Gaspard was never informed by Deputy Smith that he had an arrest warrant or even papers to serve on Faron. Therefore, none of the “three things” necessary, according to State v. Lindsay, supra, were present as Mrs. Gaspard was not aware that Smith was “acting in ... [his] official capacity, while attempting to seize property, serve process or arrest....”
For these reasons, the conviction and sentence of defendant, Louetta Gaspard, is hereby reversed.

B. Merk Gaspard:

The facts surrounding the arrest and conviction of defendant, Merk Gaspard, again lead us to the conclusion that the officers’ questions to this defendant were in the nature of an investigation rather than in the nature of an arrest. For the reasons set forth above, we find Merk Gaspard’s conviction and sentence should also be reversed and vacated.
As shown by the following excerpts from the testimony of Deputy Smith at the hearing on the motion to quash, Smith had not made a positive identification of Faron at the time when he approached the Gaspard home:
*372 “A. Well when I was asking them some questions about Faron and asking them to go get Faron out the house I saw Faron, later on positively identified Faron that day going in the house.
[[Image here]]
Q. You think you saw Faron enter the house?
A. I’m pretty sure it was. Later on I positively identified him.
Q. O.K.
A. It was him. Fitting the description of him.”
At trial, immediately following the hearing on the motion to quash, Smith further testified:
“A. The address of the home was 966 South Main in Marksville. When I arrived in the driveway I noticed a white male approximately six foot high, 30 years old, beard and mustache, long hair, slim built appeared to be Faron Gaspard, to my knowledge at that time.
Q. Did you know Faron Gaspard personally prior to this time?
A. Prior to it yes.
Q. And did you — when you said you thought this was Faron Gaspard that you viewed, was that based upon your personal knowledge or do you have any further knowledge..
A. ... Personal knowledge, he appeared to be him.”
It appears clear from the above excerpts that Smith had not positively identified Far-on at the time of questioning Mr. Gaspard. Insofar as no positive identification had been made, this questioning was done in the investigative stage and Mr. Gaspard’s response would not constitute “resisting an officer” under the provisions of LSA-R.S. 14:108. See State v. Nix, supra; State v. Lindsay, supra; Brumfield v. Jones, supra.
The defendants rely, correctly we find, on State v. Smith, 352 So.2d 216 (La.1977) as authority for their position that, under the facts presented, misrepresenting the presence of his son; did not constitute resisting an officer by Mr. Gaspard.
The facts which preceded the arrest of the defendants in the Smith case are as follows. In October of 1976, several members of the New Orleans Police Department visited the residence of defendant, Shirley Smith, to inquire into the whereabouts of Smith’s son, Gregory Smith, who was wanted for his alleged participation in an armed robbery. Based upon information supplied to them that Gregory had been seen in the vicinity of Smith’s home, the officers had reason to believe that Gregory might be hiding in • Smith’s house. The officers, who had neither a search warrant nor an arrest warrant, were admitted to the front room of Shirley’s home where they began to question her and her common law husband, deManuel. The officers were told that Gregory had fled to California and no one else was in the house.
Not satisfied with this response, the officers requested permission to search the remainder of the house. Defendants had positioned themselves in the entrance of the hallway which led to the remainder of the house and refused permission for the search. At that time, the officers heard a noise in the rear of the house and attempted to gain access to the hallway. Defendant, deManuel, refused to move and the officer was forced to shove him out of the way. As the officers proceeded down the hallway, they received a call on their radio from other police officers who remained outside of the house that someone was attempting to climb out of a rear window. The officers rushed to the rear bedroom, found Gregory and immediately arrested him. Thereafter, defendants, Smith and deManuel, were arrested and ultimately charged with resisting an officer.
Although the Supreme Court affirmed the conviction of deManuel because he physically blocked the officer’s way once exigent circumstances were present, they reversed the conviction of Shirley Smith for resisting an officer based upon her misrepresentation of the presence of her son in the house.
In Smith, supra, the Louisiana Supreme Court found that the officers were merely conducting an investigation at the time of Mrs. Smith’s misleading statements and had *373 neither an arrest warrant nor a search warrant. The officers had gone to the defendant’s home merely to inquire about the whereabouts of a suspect during the investigatory process, but were prepared to arrest Gregory as soon as they found him. In reversing Smith’s conviction, the court determined that the defendant had not opposed, resisted, or obstructed the officers once exigent circumstances occurred, i.e., the officers heard a noise and acquired the right to enter the rear of the house and search the home for their suspect.
We find the facts in Smith and the case before us strikingly similar. It appears from the testimony of Deputy Smith that no positive identification of Faron had been made and Smith was investigating the presence of a person “appearing” to be Faron. Although Smith had an arrest warrant when he approached the Gaspard residence, he was merely “pretty sure” that the person he saw under the carport was Faron. As in Smith, swpra, in this case, Deputy Smith was prepared to arrest Faron when he found him. But, at the point at which he questioned the Gaspards and asked to search their home, he was looking for someone who “appeared to be Faron.” As stated in Brumfield v. Jones, supra, at page 155 “interference with an investigation alone does not constitute interference with an officer in the course of an arrest.” See also State v. Nix, supra; State v. Lindsay, supra.
Had a positive identification been made at the time of questioning, exigent circumstances would have existed. At that point, insofar as Smith possessed an arrest warrant, he had the authority to enter the Gas-pard home and make the arrest under the authority of LSA-C.Cr.P. art. 224:
Art. 224. Forcible entry in making arrest
In order to make an arrest, a peace officer, who has announced his authority and purpose, may break open an outer or inner door or window of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, where the person to be arrested is or is reasonably believed to be, if he is refused or otherwise obstructed from admittance. The peace officer need not announce his authority and purpose when to do so would imperil the arrest.
The salient point to be made here is that the officer’s questions were in the nature of an investigation, i.e., “Where is Faron?”, just as the questions asked in Smith were in the nature of an investigation, i.e. “Where is Gregory?” The answers given in each ease are false, but do not rise to the level of a crime because they take place during the officer’s investigation in his attempt to locate his suspect. The critical inquiry is whether the officer was in the investigatory stage or the arrest stage and the answer must be the former as there is no need to ask the whereabouts of a suspect who has been located and for whom an officer has an arrest warrant.
For the foregoing reasons, the convictions and sentences of defendants, Merk Gaspard and Louetta Gaspard, are hereby reversed and vacated.
REVERSED AND VACATED.
DOMENGEAUX, C.J., concurs in part and dissents in part and assigns reasons.