619 So.2d 62 (1993)
STATE of Louisiana
v.
Olga MORENO.
No. 92-K-0089.
Supreme Court of Louisiana.
May 24, 1993.
*63 Kevin V. Boshea, New Orleans, for applicant.
Richard Ieyob, Atty. Gen., John M. Mamoulides, Dist. Atty., Louise S. Korns, Dorothy Pendergast, Alan Green, Barron C. Burmaster, Asst. Dist. Attys., for respondent.
DENNIS, Justice.[*]
After the trial court overruled Olga Moreno's motion to suppress, she pleaded guilty to possession of cocaine in excess of 400 grams, La.R.S. 40:967, and appealed from that ruling. See State v. Crosby, 338 So.2d 584 (La.1976). The court of appeal affirmed. State v. Moreno, 592 So.2d 823 (La.App. 5th Cir.1991). This court granted a writ to review the rulings below. State v. Moreno, 596 So.2d 541 (La.1992). We now reverse the trial court and court of appeal judgments and remand the case to the district court for further proceedings consistent with this opinion.

FACTS
On May 7, 1990, Officers Simone and Cummings were at the New Orleans International Airport, detailed to watch incoming flights from "source cities." One passenger arriving on Flight 1076 from Miami caught their attention. The officers testified *64 that a thirty-eight-year-old Hispanic female, later identified as defendant Olga Moreno, walked through the concourse in a hurried fashion. She looked nervously over her shoulder and from side to side; she held a purse and one carry-on bag. Believing this behavior and her departure point of Miami to be consistent with a "drug courier profile," the officers began a surveillance. They followed as she made her way downstairs and walked through the baggage claim area without claiming any luggage. After she exited the airport they stopped her, introduced themselves, and asked if she would speak with them. She agreed, telling the officers that she was traveling alone and had just arrived from Miami. Officer Simone asked her to produce some identification and her ticket. Although, Ms. Moreno was unable to find her ticket, she did produce an identification card and an American Airlines seating stub for seat 22-A.
Noticing that the stub showed seat 22-A assigned to a person named "Perez" while the identification card listed the name "Moreno," Simone suspected that Moreno was traveling under an alias, another element of the drug profile. Moreno's explanation was that she had bought her ticket from "a man at the airport in Miami." She also indicated that she was having trouble understanding the officers. They asked her to accompany them inside, where an interpreter would be found.
The officers led her to the Southwest Airlines baggage claim office and called in a bilingual airline employee. Through the interpreter, the officers asked the same questions and received the same answers. Under further questioning, Moreno said that she had been in Miami visiting friends for about three weeks.
Simone left Moreno alone with Cummings in the baggage claim office and went to the American Airlines ticket counter. While there, Simone learned that seat 22-A had been assigned to a passenger ticketed as "Velma Perez" and that seat 22-B had been assigned another ticketed as "Susanna Perez." He also learned that both seats had been booked at the same time by the same travel agency. When Simone returned, he further questioned Moreno about her travel arrangements. Moreno denied knowing a Susanna Perez and reiterated that she was traveling alone.
The detective then asked if he could search her purse and carry-on bag. She did not object. When Simone found only toiletries and a small amount of clothing in the small bag, he asked why she carried so little clothing. Moreno replied that she had left some of her belongings at her friend's house. The detective then asked if Moreno would consent to a full body search. When Moreno refused, stating that the officers needed "a paper" to search her, Simone immediately informed her that she was "detained," and that she would have to accompany them to their office on the second floor, where she would have to wait until they could get a search warrant. Simone's testimony indicated that Moreno was not free to leave after this point.
The officers then proceeded with Moreno from the baggage claim area up to the lobby area on the next level of the airport. As they were proceeding through the lobby in order to go up to the detectives' office on the floor above the lobby, they stopped at the American Airlines ticket counter to check the flight number and actual arrival time of Moreno's flight so that information could be included in an application for a search warrant. At this point, Simone left Moreno in the custody of Cummings and stepped away to look at the flight information board. Moreno asked Cummings where they were going, and Cummings told Moreno that they were going to get a search warrant. Moreno then told Cummings that a warrant would be unnecessary and that she would turn over the drugs she was carrying. Agent Cummings took Moreno into the women's restroom, where Moreno produced a small bag of cocaine from her person.

APPLICATION OF LEGAL PRECEPTS
Article I, section 5 of the Louisiana Constitution provides:
Every person shall be secure in his person, property, communications, houses, *65 papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
Except for a few narrowly drawn exceptions, a search or seizure requires a warrant. One of these exceptions is the investigatory stop, in which "[a] law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." La.C.Cr.P. art. 215.1(A). Although the purpose of the stop is limited and the duration is brief, an investigatory stop constitutes a "seizure," State v. Bolden, 380 So.2d 40 (La.1980); see also Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968); United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (A person is seized under the Fourth Amendment when a reasonable person would think that he was not free to leave.). An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be engaged in criminal activity, or there must be reasonable grounds to believe that the person is wanted for past criminal conduct. Moresi v. Dept. of Wildlife & Fisheries, 567 So.2d 1081 (La.1990), citing authorities. Based on the totality of the circumstancesthe whole picturethe detaining officers must have particularized and objective basis for suspecting the particular person stopped of criminal activity. Id.
As this court held in a similar airport arrest case, the suspect's detention beyond initial questioning for the purpose of securing a search warrant is not merely a brief intrusion on liberty permissible under La.C.Cr.P. art. 215.1 or the Terry doctrine, but a taking into custody, or an arrest, justifiable only on the basis of probable cause. State v. Jackson, 457 So.2d 660 (La.1984). In State v. Jackson, supra, the defendant Jackson was seen deplaning a flight from Los Angeles. Jackson proceeded through the concourse in an unusually slow manner, occasionally glancing over his shoulder. He retrieved one small bag from the baggage claim. The officers stopped the defendant as he was leaving the airport building. After being asked if he would speak with the officers, Jackson replied, "Yeah, I don't mind speaking. What do you want?" The officer asked for Jackson's identification and his plane ticket. Jackson stated that he did not have any identification and that he had left his ticket on the plane. The officers then informed him that they suspected him of drug trafficking. They asked if they could search Jackson's bag. The defendant refused and stated that they would have to get a warrant if they wanted to search it. The officers replied that they were going to get a warrant and that the defendant would have to accompany them to the airport police office. Upon Jackson's arrival at the office, he was frisked for weapons. While the officer typed a search warrant, the defendant ultimately consented to having the bag searched. The court in Jackson held that when the defendant was relocated to the police office for further questioning, the "detention to which he was subjected exceeded the scope of a permissible investigatory stop." State v. Jackson, 457 So.2d 660, 663 (La.1984).
The officers in the present case, just as those in Jackson, extended the primary investigatory stop further than warranted by the totality of the circumstances. See State v. Geraci, 518 So.2d 554 (La.App. 5th Cir.1987). Assuming arguendo that the officers had reasonable suspicion justifying their initial stop and questioning of Moreno, they nevertheless violated her constitutional rights by arresting her without probable cause. When the officers took Moreno into custody and forced her to walk toward their office on the second floor, after she refused to submit to a search of her body, the officers exceeded the limited *66 bounds of an investigatory stop. As the court of appeal noted, Moreno was placed under arrest when she refused to consent to the full body search, because thereafter the officers, by telling her that she would have to accompany them to their office, "indicate[d] an intent to effect an extended restraint on [her] liberty." State v. Moreno, 592 So.2d 823, 829 (La.App. 5th Cir. 1991); see also State v. Raheem, 464 So.2d 293, 296 (La.1985); State v. Tomasetti, 381 So.2d 420 (La.1980); State v. Commodore, 418 So.2d 1330 (La.1982); State v. Ruffin, 448 So.2d 1274 (La.1984); State v. Wichers, 392 So.2d 419 (La.1980); State v. Geraci, 518 So.2d 554 (La.App. 5th Cir.1987); State v. Vincelli, 555 So.2d 21 (La.App. 1st Cir. 1989); 3 LaFave, Search and Seizure, § 9.2(g) (2d ed. 1987) (The transportation of a suspect, even of a short distance, is more intrusive than a mere stop.); People v. Bloyd, 416 Mich. 538, 331 N.W.2d 447 (1982) (The transportation is impermissible when the defendant's conduct was suspicious but there had not been any report of a crime recently in the vicinity.); State v. Grogan, 373 So.2d 1300 (La.1979). Subject to a few well-delineated exceptions, an arrest without a warrant is per se unreasonable. State v. Raheem, 464 So.2d 293, 295 (La.1985). Under Louisiana law, in order to make a valid arrest without a warrant, an officer must have reasonable (probable) cause to believe that the person to be arrested has committed an offense. La. C.Cr.P. art. 213; see also State v. Burton, 416 So.2d 73 (La.1982). Reasonable cause to arrest exists when the facts and circumstances known to the arresting officer and of which he has reasonable, trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Raheem, 464 So.2d 293, 296 (La.1985); State v. Edwards, 406 So.2d 1331 (La.1981); see also Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).
At the time of Ms. Moreno's arrest, the officers only knew that (1) Ms. Moreno was arriving in New Orleans from Miami, (2) she looked over her shoulder a couple of times while the officers followed her, (3) she possibly had used a ticket originally issued to another person or issued to her under a different name, (4) she had no luggage other than her purse and a carry-on bag, (5) a search of the purse and the carry-on bag revealed no illicit drugs or criminal evidence, and (6) she refused to submit to a body search without a warrant. Officers Simone and Cummings did not have probable cause to arrest Ms. Moreno, because, under the totality of the circumstances known to the officers at the time of the arrest, there did not exist sufficient facts to justify the officers' belief that Ms. Moreno had committed a crime.
The fact that Moreno said she bought her ticket from a man at the Miami airport but was carrying a ticket stub issued to "Velma Perez" was suspicious but did not constitute probable cause to believe that she was committing an offense. Therefore, the officers were justified only in using the least intrusive means reasonably available to verify or dispel the suspicion in a short period of time. See Florida v. Royer, 460 U.S. 491, 500-01, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983); 1 LaFave and Israel, Criminal Procedure, § 3.8(b) (1984); 3 LaFave, Search and Seizure, § 9.2(f) (2d ed. 1987). If such brief, lesser intrusive means were available, the officers did not use them. Instead, they precipitously arrested Moreno, taking her into custody and forcing her toward their second floor office, although they had exhausted the grounds and scope of the investigatory stop and clearly did not have probable cause or valid grounds for arrest.
Moreno's comprehension and refusal to waive her constitutional rights cannot be considered suspicious conduct. See e.g., State v. Smith, 336 So.2d 867, 868 (La. 1976) (The defendant has the constitutional right to remain silent when under custodial arrest or interrogation, and no adverse inference may be drawn from an accused's exercise of his constitutional right to do so.); See also Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (Refusal to answer questions or listen to the police does not furnish grounds for detainment.). That Ms. Moreno was travelling with little clothing hardly could be *67 considered indicative of criminal activity. This practice is equally consistent with innocent behavior as, for instance, in the case of a traveller who frequently visits the same area. See e.g. State v. Washington, 364 So.2d 958 (La.1978); State v. Matthews, 366 So.2d 1348, 1351 (La.1978); State v. Davis, 359 So.2d 986 (La.1978); State v. Kinnemann, 337 So.2d 441 (La. 1978); State v. Truss, 317 So.2d 177 (La. 1975); State v. Saia, 302 So.2d 869 (La. 1974); State v. Key, 375 So.2d 1354, 1355 (La.1979). With the limited information that the officers had up to that point, the officers did not have the requisite probable cause necessary to apply for the search warrant that the officers threatened to obtain. See generally 1 LaFave, Search and Seizure, § 3.1(b) (2d ed. 1987 & supp. 1993); 3 LaFave, Search and Seizure, § 8.2(c) (2d ed. 1987).
The fact that the defendant "consented" and handed over the contraband after she had been seized or arrested in violation of her constitutional rights did not cancel the infringement upon her liberties. Since the officers had no probable cause to arrest the defendant, the subsequent "consent" to turn over the contraband was thereby vitiated, as it was not sufficiently attenuated from the unlawful conduct to be a product of free will, considering the temporal proximity of the illegality and the consent, the lack of intervening circumstances, and the purpose and flagrancy of the misconduct. Accordingly, the fruits of the unlawful arrest should have been suppressed. See State v. Raheem, 464 So.2d 293, 297 (La.1985); State v. Zielman, 384 So.2d 359 (La.1980); State v. Bennett, 383 So.2d 1236 (La.1980) (on rehearing); see also Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
The same result would be required if the well-established federal constitutional principles were to be applied. In Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983), the United States Supreme Court held that when a seizure is permitted on less than probable cause, as is the case with an investigatory stop, then the scope of the detention must be carefully tailored to the stop's underlying justification.
[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.
The Court further noted:
Asking for and examining Royer's ticket and his driver's license were no doubt permissible in themselves, but when the officers identified themselves as narcotics agents, told Royer that he was suspected of transporting narcotics, and asked him to accompany them to the police room, while retaining his ticket and driver's license and without indicating in any way that he was free to depart, Royer was effectively seized for the purposes of the Fourth Amendment. These circumstances surely amount to a show of official authority such that "a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S., at 544, 100 S.Ct., at 1877 (opinion of Stewart, J.) (footnote omitted).
Florida v. Royer, 460 U.S. 491, 500-01, 103 S.Ct. 1319, 1325-26, 75 L.Ed.2d 229 (1983). The Court held that the officers extended the defendant's seizure beyond the limited scope allowed by an investigatory stop. Thus, even if we were to analyze this case on federal grounds, the result would be the same.

DECREE
For the reasons assigned, defendant's conviction and sentence are reversed, defendant's motion to suppress is granted, and the case is remanded to the district *68 court for further proceedings in accordance with law.
REVERSED AND REMANDED.
MARCUS, LEMMON and COLE, JJ., dissent and assign reasons.
COLE, Justice (dissenting).
I respectfully dissent from the majority's opinion granting defendant's motion to suppress.
First, I reject the majority's finding that police placed defendant into custody when they asked her to come with them to the office. I believe the officers did not go beyond the bounds of a reasonable investigatory stop. The record shows defendant was not held or physically detained in any manner, and agreed to walk with police to the office for the purposes of obtaining a search warrant. Prior to reaching the office, defendant, with no provocation from the officers, voluntarily informed them, "You don't have to get the paper, I'll give you the coke." This fact scenario is markedly different from the coercive situation in Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), where two officers confined Royer in a small room, retained his driver's license and ticket and seized his luggage. Therefore, I would find no seizure took place, and defendant was free to consent to the search.
Secondly, even assuming the police went beyond the scope of an investigatory stop, I feel that under the totality of the circumstances, they had probable cause to arrest defendant. Defendant was a young Hispanic woman arriving from Miami, a drug source city. She had no luggage, only a purse and a small carry on bag. She was walking in a hurried and nervous manner. The name on the identification she produced did not match the name on her flight ticket, and defendant was unable to give a plausible explanation for the discrepancy, thus indicating she was traveling under an assumed name. Likewise, defendant was unable to explain why she had no luggage or clothing with her, especially when she allegedly was returning from visiting friends in Florida for a few weeks. Finally, defendant initially indicated that she could not understand English well, yet gave a quick and clear response in English to the officer's request for a body search, indicating an attempt at deception on her part. Taking all these factors together, I find the police had probable cause to believe defendant was committing the crime of drug smuggling, and the arrest and seizure of defendant was lawful.
For these reasons, I would affirm the decisions of the trial court and court of appeal denying the motion to suppress.
MARCUS, Justice (dissenting).
I disagree with the majority's conclusion that defendant was seized at the time that police asked her to accompany them to their office. Since defendant consented to the search on the way to the office, I find the case is factually distinguishable from the United States Supreme Court's plurality decision in Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Further, even assuming that a seizure took place, I believe the officers had probable cause at the time of the seizure to arrest defendant. As the court of appeal stated:
At the time of her final detention (when she initially refused a body search), the officers knew that the defendant was a young Hispanic woman, arriving from a drug source city with only a purse and carry-on bag walking from the airplane in a manner so hurried and nervous that it attracted their attention. She was travelling under what appeared to be an assumed name and was unable to produce an airline ticket in her name. She had only a boarding pass in a Hispanic name that was different from the name she produced as evidence of identification. Her explanation as to the acquisition of her flight ticket and the name discrepancy was improbable and implausible. The officers knew that her travel arrangements had been made through the same agency at the same time as those of her seat mate, Susanna Perez, signalling that the defendant was under an assumed name and travelling with someone although she claimed to be traveling alone. Her response to the question *69 as to the reason she had virtually no clothing in the sparse contents of her carry-on bag did not amount to a logical explanation or answer to a reasonable question and was for all intents and purposes an evasion. Logic would dictate that if, as she initially said, she had been "visiting friends in Florida for a few weeks," and presumably returning home, she would have brought her clothes home with her. They would not be at the home of still another "friend." Finally, her clear and quick response to the officer's request for a body search evidenced a much better command of the English language than she previously attempted to display. All these circumstances indicated deception on Moreno's part.
We find these facts and circumstances viewed and considered by experienced police officers, justified the belief that the defendant was carrying contraband drugs and had committed a crime. The "totality of the circumstances" standard, with emphasis on the officers' considerable law enforcement experience of eleven and one-half years and specific training in flight surveillance, compels us to conclude that the officers had probable cause to believe that Moreno was committing a crime (smuggling in narcotics) and that the arrest and seizure of the defendant was lawful.
592 So.2d at 829-30 (emphasis added) (citations omitted).
For the foregoing reasons, I would affirm the decision of the court of appeal denying the motion to suppress.
LEMMON, Justice, dissenting.
In their initial confrontation with defendant, the police had an articulable suspicion which warranted an investigatory detention. That investigation yielded information that the suspect fitting the drug courier profile was traveling under an alias and had bought her ticket "from a man at the airport" in a manner that would be considered very unusual for anyone but a drug trafficker. See United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). These factors, along with other inconsistencies in her answers to questions, either established probable cause to detain her while obtaining a warrant to search her or at least came very close to doing so.
Arguably, the facts known to the police were insufficient to establish probable cause when the police told defendant to accompany them to the second floor of the airport. Nevertheless, there clearly was reasonable suspicion, and she almost immediately thereafter, while being transported to the second floor from the first floor, made the statement about possessing the cocaine. She therefore volunteered the information about possessing cocaine (clearly giving rise to probable cause) before the duration and degree of detention became so extensive that the bounds of an investigative stop had been exceeded.[1]See United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) and United States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).
NOTES
[*] Cole, J., assigned to participate in the decision of this case argued prior to his retirement.
[1] The brief and slightly intrusive detention in this case was a far cry from the detention in Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), a five-to-four plurality decision in which the police took the suspect to a small windowless room after retaining possession of his driver's license and airline ticket and obtaining possession of his checked luggage without his consent.