I iPLOTKIN, Judge,
dissenting.
The defendants have been charged with distribution of marijuana. Their motion to suppress the evidence was granted by the trial court. The State now seeks relief from this ruling. The majority grants the State the relief sought, I respectfully dissent.
The facts are well set out in the majority’s opinion and do not need to be repeated.
The majority finds that the officers had reasonable suspicion of criminal activity to detain the defendants when they arrived in New Orleans. The authorization for a temporary stop by a police officer of a person in a public place is set forth in C.Cr.P. art. 215.1, which provides in part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
See also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Carey, 609 So.2d 897 (La.App. 4th Cir.1992).
The factors cited by the majority do not show a suspicion that the defendants were engaged in criminal activity, the essential requirement for a brief detention under art. 215.1. The only factors the officers knew when they stopped the defendants were that they had paid cash for two one-way tickets to Cleveland via New Orleans, rather than via Houston, that they were Hispanic men (not uncommon in Texas), and that they checked one |2bag and had carry-on luggage. The officers also knew that the Houston police actively patrolled the Houston bus depot for narcotics activity. Although the defendants’ choice of travelling to Cleveland via a longer route was not what a person would normally do, this choice did not arise to an inference of criminal activity on the defendants’ part. Indeed, there was no indication from the tip that the defendants were engaged in any criminal activity whatsoever, merely that they were arriving in New Orleans. Based on these factors, the officers did not have reasonable suspicion of criminal activity on the defendants’ part.
The majority also states that once the officers questioned the defendants, they had probable cause to detain them. At that point, the defendants had denied any knowledge of the checked bag, had given vague answers to questions about their employment and the names of the friends they were going to visit in Cleveland, had become increasingly nervous, and had asked the officers the purpose of the questioning. At best, these additional factors would give the officers reasonable suspicion to briefly detain them. How *1138 ever, at that point the officers escorted the defendants to the Amtrak police office, a “detention” that exceeded the scope of an investigatory stop pursuant to art. 215.1.
The majority cites and distinguishes State v. Moreno, 619 So.2d 62 (La.1993). Moreno, who had arrived from Miami, walked hurriedly through the airport terminal, looking nervously over her shoulder. She passed by the baggage claim area without claiming any baggage, and the officers stopped her as she exited the airport. The officers introduced themselves and asked her to produce some identification and her ticket. Although she did not produce her ticket, she gave them her identification in the name of Olga Moreno and a seat boarding pass stub in the name of Perez. When | -¡questioned about this discrepancy, Moreno told the officers she had purchased her ticket from a man in the Miami airport. Because she was having difficulty understanding the officers, she agreed to accompany them back inside the airport to find an interpreter. The officers stopped near a ticket counter, found an interpreter, and asked Moreno the same questions, receiving the same responses.
While Moreno remained with one officer, the other officer went to the ticket counter of the airline upon which the defendant had flown and learned that the passenger assigned to the seat for which Moreno held the boarding pass stub was ticketed as “Velma Perez” and that the adjoining seat had been assigned to “Susanna Perez”. He also learned that the tickets for these seats had been booked at the same time by a travel agency. When questioned about this, Moreno denied any knowledge of Susanna Perez. She then consented to a search of her purse and carry-on bag, which revealed no contraband. In response to the officers’ questions about why she had so few clothing, she indicated that she had left some of her belongings at a friend’s house. When Moreno refused to consent to a full body search, the officers advised her she was being detained and that she would have to accompany them to their office while they obtained a search warrant. On the way to the office, she told one of the officers that a warrant would not be necessary and that she would surrender the drugs she was carrying. An officer then accompanied her into the lady’s room, where she turned over a small bag of cocaine.
On review of the trial court’s failure to suppress this evidence, the Court assumed that the officers had reasonable suspicion to stop Moreno and question her. The Court found, however, that the officers’ actions in further detaining her and forcing her to accompany them to their office, |4when she refused to consent to a full body search, violated her constitutional rights. The Court found that this detention exceeded the permissible bounds of an investigatory stop and resulted in an arrest, for which the officers had to have probable cause. The Court concluded that, based upon the above facts, the officers did not have probable cause to believe Moreno was committing a crime. The Court noted:
At the time of Ms. Moreno’s arrest, the officers only knew that (1) Ms. Moreno was arriving in New Orleans from Miami, (2) she looked over her shoulder a couple of times while the officers followed her, (3) she possibly had used a ticket originally issued to another person or issued to her under a different name, (4) she had no luggage other than her purse and a carry-on bag, (5) a search of the purse and the carry-on bag revealed no illicit drugs or criminal evidence, and (6) she refused to submit to a body search without a warrant. Officers Simone and Cummings did not have probable cause to arrest Ms. Moreno, because, under the totality of the circumstances known to the officers at the time of the arrest, there did not exist sufficient facts to justify the officers’ belief that Ms. Moreno had committed a crime.
The fact that Moreno said she bought her ticket from a man at the Miami airport but was carrying a ticket stub issued to “Velma Perez” was suspicious but did not constitute probable cause to believe that she was committing an offense. Therefore, the officers were justified only in using the least intrusive means reasonably available to verify or dispel the suspicion in a short period of time. See Florida v. Royer, 460 U.S. 491, 500-01, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983); 1 La *1139 Fave and Israel, Criminal Procedure, Sec. 3.8(b) (1984); 3 LaFave, Search and Seizure, Sec. 9.2(f) (2d ed. 1987). If such brief, lesser intrusive means were available, the officers did not use them. Instead, they precipitously arrested Moreno, taking her into custody and forcing her toward their second floor office, although they had exhausted the grounds and scope of the investigatory stop and clearly did not have probable cause or valid grounds for arrest.
Moreno’s comprehension and refusal to waive her constitutional rights cannot be considered 15suspicious conduct. See e.g., State v. Smith, 336 So.2d 867, 868 (La.1976) (The defendant has the constitutional right to remain silent when under custodial arrest or interrogation, and no adverse inference may be drawn from an accused’s exercise of his constitutional right to do so.); See also Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (Refusal to answer questions or listen to the police does not furnish grounds for detainment.). That Ms. Moreno was trav-elling with little clothing hardly could be considered indicative of criminal activity. This practice is equally consistent with innocent behavior as, for instance, in the case of a traveller who frequently visits the same area. See e.g. State v. Washington, 364 So.2d 958 (La.1978); State v. Matthews, 366 So.2d 1348, 1351 (La.1978); State v. Davis, 359 So.2d 986 (La.1978); State v. Kinnemann, 337 So.2d 441 (La. 1976); State v. Truss, 317 So.2d 177 (La.1975); State v. Saia, 302 So.2d 869 (La.1974); State v. Key, 375 So.2d 1354, 1355 (La.1979). With the limited information that the officers had up to that point, the officers did not have the requisite probable cause necessary to apply for the search warrant that the officers threatened to obtain. See generally 1 LaFave, Search and Seizure, Sec. 3.1(b) (2d ed. 1987 & supp. 1993); 3 LaFave, Search and Seizure, Sec. 8.2(e) (2d ed. 1987).
The fact that the defendant “consented” and handed over the contraband after she had been seized or arrested in violation of her constitutional rights did not cancel the infringement upon her liberties. Since the officers had no probable cause to arrest the defendant, the subsequent “consent” to turn over the contraband was thereby vitiated, as it was not sufficiently attenuated from the unlawful conduct to be a product of free will, considering the temporal proximity of the illegality and the consent, the lack of intervening circumstances, and the purpose and flagrancy of the misconduct. Accordingly, the fruits of the unlawful arrest should have been suppressed. See State v. Raheem, 464 So.2d 293, 297 (La.1985); State v. Zielman, 384 So.2d 359 (La.1980); State v. Bennett, 383 So.2d 1236 (La.1980) (on rehearing); see also Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
The same result would be required if the well-established federal constitutional principles were to be applied. In Florida v. Royer, 460 U.S. 49, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983), the United States Supreme Court held that when a seizure is permitted on less than probable cause, as is the case with an investigatory stop, then the scope of the detention must be carefully tailored to the stop’s underlying justification.
[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer’s suspicion in a short period of time. It is the State’s burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.
The Court further noted:
Asking for and examining Royer’s ticket and his driver’s license were no doubt permissible in themselves, but when the officers identified themselves as narcotics agents, told Royer that he was suspected of transporting narcotics, and asked him to accompany them to the police room, while retaining his ticket *1140 and driver’s license and without indicating in any way that he was free to depart, Royer was effectively seized for the purposes of the Fourth Amendment. These circumstances surely amount to a show of official authority such that “a reasonable person would have believed that he was not free to leave.” United States v. Mendenhall, 446 U.S. [544], at 554, 100 S.Ct. [1870], at 1877 [64 L.Ed.2d 497 (1980) ] (opinion of Stewart, J.) (footnote omitted).
Florida v. Royer, 460 U.S. 491, 500-01, 103 S.Ct. 1319, 1325-26, 75 L.Ed.2d 229 (1983). The Court held that the officers extended the defendant’s seizure beyond the limited scope allowed by an investigatory stop. Thus, even if we were to analyze this case on federal grounds, the result would be the same.
Moreno, at 66-67.
Here, the defendants’ actions upon entering the bus depot were even less “suspicious” than those of Moreno. Although the officers had the ^additional information available to them from the “tip”, as noted above this tip did not contain any information of criminal activity. Unlike Moreno, there was no indication that the defendants were travelling under assumed names. Just as the Court found in Moreno, here the facts known to the officers did not arise to a level of probable cause which was necessary to detain them further and transport them to the Amtrak police office. The fact that they refused to supply “adequate” answers to the officers’ questions would not give the officers probable cause to detain them. See Moreno; Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).
The State argues that the defendants “consented” to accompanying the officers to the Amtrak police station. However, the officers’ seizure of the suitcase, their advisement of the defendants’ rights, and their escorting them to the police room could very easily have caused the defendants to believe that they were not entitled to refuse to accompany the officers. The facts known to the officers at that time do not support a finding of probable cause that the defendants were engaged in criminal activity which would entitle the officers “to effect an extended restraint on their liberty.” As such, the defendants’ consent to a search of their persons and to the opening of the suitcase, ownership of which they denied, cannot be said to have been freely given.
The trial court is vested with great discretion when ruling on motion to suppress. State v. Williams, 594 So.2d 476 (La.App. 4th Cir.1992). Here, the trial court did not abuse its discretion by suppressing the evidence in this case. Therefore, I would affirm the trial court’s ruling.