820 So.2d 1101 (2002)
STATE of Louisiana
v.
Johnny GRAHAM and Lucas Jefferson.
No. 01-KA-1232.
Court of Appeal of Louisiana, Fifth Circuit.
May 29, 2002.
*1102 Frank G. DeSalvo, Harry J. Boyer, Jr., New Orleans, LA, for Appellants Johnny Graham and Lucas Jefferson.
Paul D. Connick, Jr., District Attorney, Parish of Jefferson, State of Louisiana, Terry M. Boudreaux-Appellate Counsel, Alison Wallis-Counsel of Record on Appeal, Assistant District Attorneys, Gretna, LA, for Appellee State of Louisiana.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and SUSAN M. CHEHARDY.
JAMES L. CANNELLA, Judge.
Defendants, Johnny Graham (Graham) and Lucas Jefferson (Jefferson) appeal, under State v. Crosby,[1] from the trial court's denial of their motion to suppress. For the reasons which follow, we find no error in the trial court ruling and affirm their convictions and sentences.
On February 11, 1999, Graham and Jefferson were charged by bill of information with possession of cocaine, over 400 grams, in violation La. R.S. 40:967(F). They were also charged, along with twenty other defendants, with racketeering activity involving the sale and distribution of cocaine, a violation of La. R.S. 15:1353. The bill of information contained eleven counts, but only count one, the charge of racketeering, and count five, the charge of possession of cocaine of over 400 grams, pertain to Graham and Jefferson. On November 18, 1998, the Defendants were arraigned and they entered pleas of not guilty. The Defendants filed motions to suppress the evidence which, following a hearing, were denied by the trial court on April 20, 2000.
The following facts were developed from the suppression hearing.[2] Agent Eric Pearson of the Jefferson Parish Sheriff's Office, testified at the suppression hearing that the police had a wiretap on the telephone of John Esteen (Esteen) at his apartment.[3] They knew that he was involved in narcotics trafficking. On June 27, 1998, the police had learned, through an intercepted phone call, that someone named "Luke" was on his way to the Esteen apartment to purchase cocaine. Shortly thereafter, Agent Pearson observed two black males, later identified as the Defendants, entering the apartment complex parking area in a blue Grand Am automobile. Agent Pearson stated that the two men exited the vehicle and went into the Esteen apartment. They were inside less that 10 minutes and exited with one man holding a brown Dillard's shopping bag. The men put the brown bag into the trunk of the vehicle and drove away.
*1103 Agent Pearson testified that he and several other officers followed the vehicle for a few miles. The driver of the vehicle did not commit any traffic violations. The officers stopped the vehicle, by blocking it in, that is, one police car stops in front of the vehicle and one stops behind it. Several officers approached the vehicle. The Defendants were ordered out of the vehicle and were "secured." According to Agent Pearson, they were informed of the investigation, patted down, and handcuffed. Each Defendant was placed in a separate police vehicle and everyone was relocated to a shopping center parking lot across the street. An officer drove the Defendants' vehicle to the parking lot. Agent Pearson explained that the reason the officers relocated across the street was because of traffic. The Defendants had originally been stopped in the northbound traffic lanes of David Drive as it crosses Veterans Boulevard. Agent Pearson testified that after relocating in the parking lot, he spoke to Jefferson while he was seated in the back of the police unit. He informed Jefferson that he was under investigation for illegal narcotics. Pearson advised Jefferson of his Miranda[4] rights. He then asked Jefferson if there was anything in the vehicle that he should know about. According to Pearson, Jefferson replied that there was cocaine in the trunk of the vehicle. Pearson then asked him how much, to which Jefferson replied, "one kilo." After this statement by Jefferson, Pearson opened the trunk with a key and observed the brown Dillard's shopping bag. It contained a white powder substance in a clear cellophane wrapper. Pearson testified that Jefferson verbally consented to the search of the vehicle. No written consent was obtained.
On cross-examination, Agent Pearson admitted that no one knew that the person who arrived in the blue Grand Am at Esteen's apartment complex was Lucas Jefferson. He also admitted that the police were not sure that Lucas Jefferson was the person named "Luke" at the time of the alleged drug transaction. Further, while following the vehicle, the officers ran the license plate and the vehicle was registered to a person named Carlie Williams. Agent Pearson also stated that he did not know if there was cocaine in the brown bag. Also on cross-examination, Pearson stated that the Defendants were advised of the investigation, then handcuffed and relocated across the street, and then within minutes, Jefferson was advised of his Miranda rights while sitting in one of the police units and then asked if there was anything in his car.
Sergeant John Ladd of the Jefferson Parish Sheriff's Office also testified that, on June 27, 1998, he was conducting surveillance of Esteen's apartment. The officers had the apartment under surveillance because of knowledge they had obtained through wiretaps and observation that Esteen was involved in ongoing drug trafficking. They also had knowledge that earlier on the same day, a drug exchange involving Esteen, his sister, Rene Decay, and Ashley Wallace had been witnessed and had culminated in the arrest of Wallace with two kilos of cocaine. The narcotics were found in her vehicle, following the exchange, in a brown plastic Dillard's shopping bag. Sergeant Ladd received information that Esteen was going to distribute cocaine that day and that a person named "Luke" was on his way to purchase cocaine. During the surveillance, Sergeant Ladd observed two black males walk up three flights of stairs and knock on Esteen's door. The two individuals, who were later identified as the Defendants, *1104 entered the apartment. According to Sergeant Ladd, the Defendants only stayed at the apartment for five to ten minutes, and then they left with Jefferson carrying a brown plastic Dillard's shopping bag.
Sergeant Ladd stated that Jefferson placed the bag in the trunk of the blue Pontiac Grand Am. The two entered the vehicle and drove from the apartment complex. The Defendants proceeded onto Dickory Avenue and crossed Airline Highway traveling toward Veterans Boulevard. Sergeant Ladd, Agents Wade Barnes and Pearson, and Trooper Fitzpatrick, following in two unmarked police cars, stopped the vehicle at Veterans Boulevard and David Drive. Sergeant Ladd stated that the driver was identified as Lucas Jefferson and the passenger as Johnny Graham.
Sergeant Ladd testified that the two Defendants were ordered out of the vehicle and for safety reasons were patted down for weapons. He also stated that the Defendants were advised of the investigation and also of their constitutional Miranda rights. According to Sergeant Ladd, Agent Pearson asked Jefferson if he had anything in the trunk, to which Jefferson replied, "a kilo." Sergeant Ladd's testimony had some discrepancies, but at one point he stated that both Graham and Jefferson were handcuffed and placed into separate police units after Jefferson's admission that there was cocaine in the trunk of the vehicle.
Sergeant Ladd explained that after the two were handcuffed, both police units drove across the street and parked in a nearby shopping center parking lot, while one of the agents drove the Defendants' vehicle into the same lot. Sergeant Ladd testified that he used a key to open the trunk of the vehicle. He stated that the brown plastic Dillard's shopping bag that Jefferson was seen carrying from Esteen's apartment was in the trunk. In the bag was a heat-sealed vacuum pack of cocaine.
On cross-examination, Sergeant Ladd admitted that he did not have a physical description of the person named "Luke" who was coming over to Esteen's apartment. He also admitted that he did not have a description of the vehicle that "Luke" would be driving. Sergeant Ladd testified that the only drug activity that he observed was two individuals entering the apartment of Esteen and exiting a short time later with a brown plastic Dillard's bag. He stated that this was consistent with drug activity. Sergeant Ladd also admitted that there was no traffic violation prior to the stop of the Defendants' vehicle. He testified that there was only a ten to fifteen minute time delay from the time the agents received the tip that Luke was on his way to the time that the two Defendants showed up at Esteen's apartment.
Following the suppression hearing, the trial court denied the Defendants' motions to suppress. Thereafter, on June 26, 2000, Graham withdrew his not guilty plea and entered a plea of guilty to count one, racketeering. The State then amended the bill of information concerning count five, to possession with the intent to distribute cocaine in violation of La. R.S. 40:967(A). Graham's guilty plea was entered under State v. Crosby, reserving his right to appeal the ruling on the motion to suppress evidence. Graham was sentenced to five years imprisonment at hard labor on count one and five years imprisonment at hard labor on count five with the sentences to be served concurrently, as per the plea agreement.
Also, on June 26, 2000, Jefferson withdrew his not guilty plea and entered a plea of guilty to count one, racketeering. The State amended count five of the bill of information to possession of cocaine over *1105 28 grams, but less than 200 grams. Jefferson's guilty plea was also entered under State v. Crosby, reserving his right to appeal the denial of his motion to suppress evidence. Jefferson was sentenced to ten years imprisonment at hard labor on count one and ten years imprisonment at hard labor on count five, with the sentences to be served concurrently, as per his plea agreement. Jefferson and Graham each filed a written notice of appeal, which were granted by the trial court on May 18, 2001.
On appeal the Defendants assign only one error. The Defendants contend that they were illegally stopped and arrested and, therefore, the evidence seized pursuant to the illegal arrest should have been suppressed. The Defendants contend that the trial court erred in denying their motion to suppress.[5]
The Defendants' argument is twofold. First, they argue that the officer lacked reasonable suspicion to justify the initial investigatory stop and, thus, the contraband seized was the fruit of that illegal stop. Second, they argue that after the stop, when they were removed from their vehicle, patted down and handcuffed, and placed in separate police units, the investigatory stop elevated to an arrest without probable cause. Thus, the drugs seized as a result of the illegal arrest must be suppressed.
The State responds that there was reasonable suspicion to justify the stop of the vehicle based on the intercepted telephonic communications and the observed drug activity. The State has not responded to the argument concerning the illegal arrest.[6]
The Fourth Amendment to the United States Constitution and Article I, Section 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence was derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from the trial. State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, 989 (citing Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); State v. Tucker, 626 So.2d 707 (La.1993)).
The Louisiana Supreme Court adopted a three-tier analysis of interactions between citizens and police officers under the Fourth Amendment in State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179. The Fisher court stated:
In United States v. Watson, 953 F.2d 895, 897 n. 1 (5th Cir.1992), cert. denied, 504 U.S. 928, 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992), the court articulated a useful three-tiered analysis of interactions between citizens and police under the Fourth Amendment.
At the first tier, mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention. Id.; State v. Britton, 93-1990 (La.1/27/97); 633 So.2d 1208, 1209 (noting that police have the same right as any citizen to approach an individual in public and to engage him in conversation under circumstances that do not signal official detention).
At the second tier, the investigatory stop recognized by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police officer may briefly *1106 seize a person if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts. Watson, 953 F.2d at 897 n. 1; United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)(citing Terry, 392 U.S. at 27, 88 S.Ct. 1868); State v. Moreno, 619 So.2d 62, 65 (La.1993). See also La.Code Crim. Proc. art. 215.1(A), which provides that an officer's reasonable suspicion of crime allows a limited investigation of a person. However, reasonable suspicion is "insufficient to justify custodial interrogation even though the interrogation is investigative." Florida v. Royer, 460 U.S. 491, 499, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).
At the third tier, a custodial "arrest," the officer must have "probable cause" to believe that the person has committed a crime. Watson, 953 F.2d at 897 n. 1; Moreno, 619 So.2d at 65. See also La. Code Crim. Proc. art. 213, which uses the phrase "reasonable cause." The "probable cause" or "reasonable cause" needed to make a full custodial arrest requires more than the "reasonable suspicion" needed for a brief investigatory stop. See Terry, 392 U.S. at 22, 88 S.Ct. 1868; State v. Flowers, 441 So.2d 707, 712 (La.1983)(noting that a less intrusive stop does not require the same "probable cause" needed for an arrest).
State v. Fisher, 720 So.2d at 1182-1183.
The Fisher court then defined what constitutes an arrest. It stated:
An arrest is "the taking of one person into custody by another [through] actual restraint [that] may be imposed by force or may result from submission of the person arrested to the custody of one arresting him." La.Code Crim. Proc. art. 201. See also Moreno, 619 So.2d at 65. Whether a person has been arrested is determined by an objective test; neither the person's subjective impression nor the lack of formality of the arrest resolves the issue. State v. Thibodeaux, 414 So.2d 366 (La.1982).
The determination of whether an arrest occurred depends on the totality of the circumstances, but several factors distinguish an arrest from lesser infringements on personal liberty. State v. Allen, 95-1754 (La.9/5/96); 682 So.2d 713. A prime characteristic of any Fourth Amendment seizure of a person is whether, under the totality of the circumstances, a reasonable person would not consider himself or herself free to leave. Allen, 682 So.2d at 719; Moreno, 619 So.2d at 65 (citing United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). Ultimately, whether a person has been arrested depends on circumstances indicating an intent to impose an extended restraint on the person's liberty. Allen, 682 So.2d at 719; State v. Simms, 571 So.2d 145, 148 (La.1990).
Id. at 1183.
An arrest occurs when the circumstances indicate an intent to effect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Raheem, 464 So.2d 293, 296 (La. 1985); State v. Gibson, 97-1203 (La.App. 5th Cir.3/25/98), 708 So.2d 1276. An arrest made without probable cause is illegal and the seizure of evidence pursuant to an illegal arrest is also illegal. State v. Chirlow, 617 So.2d 1, 5 (La.App. 5th Cir.1992), writ denied, 620 So.2d 874 (La.1993); State v. Williams, 98-1006 (La.App. 5th Cir.3/30/99), 735 So.2d 62, 72.
"Probable cause," which is needed for a full custodial arrest, is more than a "reasonable suspicion." State v. *1107 Fisher, 720 So.2d at 1183. Probable cause exists when the facts and circumstances known to the arresting officer, based on reasonably trustworthy information, are sufficient to justify a belief in a man of ordinary caution that the person to be arrested has committed a crime. State v. Flagg, 99-1004 (La.App. 5th Cir.4/25/00), 760 So.2d 522, 528, writ denied, XXXX-XXXX, 786 So.2d 117 (La.3/9/01). In such cases, the determination of the existence of probable cause must be judged by the probabilities and practical considerations of everyday life on which average police officers can be expected to act. Id. at 528; State v. Harris, 00-1930 (La.App. 5th Cir.4/11/01), 786 So.2d 798, 802-803.
The trial court denied the motions to suppress the evidence. In doing so, the trial court concluded:
On June 27, 1998, law enforcement agents seized evidence from the vehicle of defendants Lucas Jefferson and Johnny Graham. The evidence show that the agents had probable cause to make the initial investigatory stopped [sic] based upon intercepted communications on John Esteen's home telephone and upon subsequent police surveillance of drug trafficking activity. Upon making the stop, the officer advised Jefferson of his Miranda rights. Jefferson made a statement that narcotics were stored in the trunk. Based on the statement, the officer had probable cause to search the trunk without a warrant and the evidence seized therefrom is not subject to suppression.
After reviewing the record before us, we find no error in the trial court ruling. While we agree with the defense argument that the investigatory stop escalated into an arrest when the Defendants were handcuffed and placed in the police units, we find, based on the totality of the circumstances, that the officers had probable cause for the arrests.
Based on two weeks of wiretaps, observations, and other arrests, the officers were well aware of the drug activity involving Esteen. Earlier on the day in question, Esteen, Wallace and Decay had been observed making a drug exchange. Decay had been stopped after leaving the drug exchange and had fled, avoiding capture at that time. Wallace had been successfully stopped and had been found to have in her possession two kilos of cocaine transported in a brown plastic Dillard's shopping bag. Later that night, the officers received a communication that "Luke" was on his way to purchase cocaine. Within about ten minutes they observed a vehicle pull into the parking lot of the apartment complex, two males leave the vehicle and go into the Esteen apartment, remain there less than ten minutes, leave with a brown plastic Dillard's shopping bag, place it in the trunk of the vehicle, and drive off. Sergeant Ladd testified that this was consistent with drug activity. Thus, evaluating the totality of the circumstances in this case, particularly the credible basis for the officers' knowledge that Esteen was conducting drug transactions, the call indicating that a drug purchase was about to take place shortly before the Defendants arrived at that apartment, and the similarity of the packaging in brown plastic Dillard's shopping bags, we find that the officers had probable cause to stop and detain the Defendants.
At that point, the Defendants were informed that they were being investigated for narcotics and were informed of their constitutional rights. They were asked if there was anything in the vehicle. Jefferson then stated that there was a kilo of cocaine in the trunk of the vehicle. Agent Pearson stated that Jefferson gave his verbal consent to search the trunk. The officers *1108 opened the trunk of the vehicle and found a quantity of cocaine in the trunk. We find no error in the trial court ruling, denying the motions to suppress filed by the Defendants.
We reviewed the record for errors patent on the face of the record, pursuant to La C.Cr.P. art. 920, and none were found.
Accordingly, based on the foregoing, we affirm the convictions of Graham of racketeering and possession with the intent to distribute cocaine and his sentences to five years imprisonment at hard labor on each count, to run concurrently. We also affirm the convictions of Jefferson of racketeering and possession of cocaine over 28 grams, but less than 200 grams, and his sentences to ten years of imprisonment at hard labor on each count, to run concurrently.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] State v. Crosby, 338 So.2d 584 (La.1976).
[2] The suppression hearings occurred over several dates. Hearings were held on March 26, 1999, April 21, 1999, May 14, 1999, May 28, 1999, July 16, 1999, July 30, 1999, September 10, 1999, October 21, 1999, January 28, 2000, and February 18, 2000. Only two dates were transcribed for this appeal, July 16, 1999 and February 18, 2000. However, this Court has the entire record before us in the related appeal in State v. Esteen, 01-0879.
[3] Esteen is one of the twenty-two defendants originally charged in the bill of information. The appeal of his case, State v. Esteen, 01-0879, is also before this panel.
[4] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[5] Both Defendants filed identical error assignments and briefs, and are represented by the same attorney. Thus, the claims will be addressed together.
[6] This Court ordered supplemental briefs addressing specific issues with record references to any facts supporting their arguments. Neither party properly complied with the Court's order.