831 So.2d 360 (2002)
STATE of Louisiana
v.
Doreen M. PARFAIT.
No. 02-KA-348.
Court of Appeal of Louisiana, Fifth Circuit.
October 16, 2002.
*363 Paul D. Connick, Jr., District Attorney, Churita H. Hansell, Terry M. Boudreaux, Donald A. Rowan, Assistant District Attorneys, Gretna, LA, for the State.
Margaret S. Sollars, Thibodaux, LA, for defendant-appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS, Judge.
In this matter, we affirm the trial court's denial of defendant/appellant's motions to suppress and affirm the defendant/appellant's conviction of attempted possession of Hydrocodone.

STATEMENT OF THE CASE
On June 6, 2001, defendant, Doreen Parfait, was charged by bill of information with possession of Hydrocodone on May 24, 2001 in violation of LSA-R.S. 40:967(C). She was arraigned on July 9, 2001 and entered a plea of not guilty. On August 27, 2001, defendant filed numerous pre-trial motions, including Motions to Suppress the Confession and Evidence. The hearing on the motions was held on the day of trial, October 23, 2001. The trial judge denied the motions. On the same date, trial was held and a jury found the defendant guilty of the lesser included offense of attempted possession of Hydrocodone. LSA-R.S. 14:27; 40:967(C).
On November 9, 2001, the trial judge sentenced the defendant to two years of imprisonment at hard labor with credit for time served. Defendant was ordered to serve her time in home incarceration. Additionally, defendant was assessed fines and costs. The State filed a multiple offender bill of information on the day of sentencing alleging that the defendant was a second felony offender. Also on that day, defendant admitted the allegations of the multiple bill. The original sentence was vacated and defendant was re-sentenced as a second felony offender under the identical terms imposed in the original sentence.
On November 13, 2001, defendant filed a motion for appeal that was granted by the trial judge on November 15, 2001. On February 1, 2002, the State filed a Motion to Revoke Home Incarceration. A hearing was held on the motion and defendant's home incarceration was revoked. The defendant was ordered to serve two years of imprisonment at hard labor, with credit for time served and the court recommended Boot Camp and Blue Waters drug treatment.

FACTS
On May 25, 2001, at approximately 10:00 p.m., Jefferson Parish Sheriff's Officer Elizabeth Cato of the Street Crimes Division received a dispatch of a disturbance at 5400 Veterans Highway, near Green Acres Road, in Jefferson Parish. Officer Cato was advised at the time of the dispatch that a white male and white female were on the roadside arguing.
*364 Officer Cato arrived alone at the E-Z Serve located at the intersection of Green Acres Road and Veterans Highway. Upon her arrival, Officer Cato observed a white male and white female exit the E-Z Serve and walk down Green Acres Road. At the time they were observed by Officer Cato, the couple was arguing loudly and "appeared to have been fighting." Their clothing was disheveled and their loud arguing had attracted a number of on-lookers in the vicinity of the store.
Officer Cato exited her police unit and asked the white female, later identified as Doreen Parfait, what was going on. The female subject replied, "Nothing." The police officer then asked the female's name and got no reply. Officer Cato addressed the male subject and asked what was going on. He explained that he and the female were having a "minor argument." The male described the female as his wife, although, according to Officer Cato, the female had earlier denied knowing the male. At that time, Parfait attempted to walk away. Officer Cato stated that, because of this, she took Parfait by the arm and escorted her to the police unit.
At the police unit, and in anticipation of a "pat-down" search of Parfait, Officer Cato asked Parfait if she was carrying any sharp objects. Parfait replied that she had some "stuff" on her. Parfait then told Officer Cato that the "stuff" was pills in her back pocket. At that time, Parfait said the pills belonged to her. However, Parfait's mother later testified at trial that the pills were her medicine and were carried by her daughter because she was elderly and disabled and was cared for by her daughter. Following Parfait's admission, Officer Cato removed six pills from Parfait's pocket and placed them in her own pocket for safekeeping. Parfait then explained to Officer Cato that she had dropped her purse, which contained the prescription bottle, in a nearby vacant lot when she was engaged in the prior fight.
Thereafter, Officer Cato performed a pat-down search of Parfait and placed her in the police unit. According to Officer Cato, the male subject appeared to have been drinking and the police officer told him to go home. Officer Cato indicated at the suppression hearing that she did not normally arrest on a disturbance of the peace or a drunken charge, because these are misdemeanors, and the situation could normally be handled by separating the antagonistic participants. Officer Cato used her flashlight and searched the nearby lot for Parfait's purse that allegedly contained the prescription bottle. Officer Cato did not locate either the purse or the bottle.
Parfait was taken to headquarters for booking. During the booking process, an additional pill was located on Parfait's person. Forensic analysis of the seven pills indicated they were the controlled dangerous substance Hydrocodone, commonly known as "Vicodin."

ASSIGNMENT OF ERROR NUMBER ONE
Defendant alleges her statement and the evidence should have been suppressed because they were obtained following her illegal arrest.
The trial judge's determination on the motion to suppress will not be disturbed on appeal, unless it is clearly wrong. See, State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, 1029, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62. In reviewing the ruling on the motion to suppress, the appellate court will look to the totality of the evidence as presented at the hearing of the motion and the trial. State v. Brooks, 01-864 (La.1/29/02), 807 So.2d 1090, 1097, fn. 3. *365 The trial judge gave the following reasons for denying the motions to suppress:
THE COURT:
Well, she [Officer Cato] testified that she [defendant] was free to go until she [defendant] was free to go, and she [Officer Cato] wasn't going to do anything based on the misdemeanor. I think through the course of the investigation, when she [Officer Cato] learned that she [defendant] had pills on her, she [Officer Cato] had a right to detain her [defendant].
Thereafter defense counsel argued that the officer grabbed the defendant's hand and the defendant was not free to go.
The trial judge responded as follows:
THE COURT:
I think under the circumstances the officer was justified.
. . . .
All right, I'm going to deny the motion to suppress.
Thereafter the defense counsel objected.
On appeal, defendant contends that the trial judge erred in denying the Motions to Suppress the Statement and the Evidence. Parfait reasons that the investigating officer "arrested" Parfait when the officer placed her hands on the defendant and walked her to the patrol unit. Parfait further argues that, at the time this occurred, the officer did not have probable cause for her arrest and, hence, the defendant's statement and the evidence seized (i.e., pills) were the product of an illegal search.
The Fourth Amendment of the United States Constitution and Article 1, Section 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. State v. Manson, 01-159 (La.App. 5 Cir, 6/27/01), 791 So.2d 749, 755. In order to discourage police misconduct, evidence recovered as a result of an unconstitutional search or seizure is inadmissible. State v. Dobard, 01-2629, p. 5 (La.6/21/02), 824 So.2d 1127. Warrantless searches and seizures are unreasonable per se unless justified by one of the specific exceptions to the warrant requirement. State v. Manson, 791 So.2d at 757 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).
When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the State bears the burden of proving that the search and seizure was justified pursuant to one of the exceptions to the warrant requirement. State v. London, 01-1016 (La.App. 5 Cir. 3/13/02), 815 So.2d 162, 164.
The constitutional protections against unreasonable search and seizure also extend to brief investigatory stops that fall short of traditional arrest. United States v. Arvizu, 534 U.S. 266, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002). During an investigatory stop, a police officer may briefly seize a person if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts. LSA-C.Cr.P. art. 215.1; State v. Graham, 01-1232, p. 7 (La.App. 5 Cir. 5/29/02), 820 So.2d 1101.
In United States v. Arvizu, 122 S.Ct. at 750-751 (2002), the United States Supreme Court discussed "reasonable suspicion" required for an investigatory stop:
When discussing how reviewing courts should make reasonable suspicion determinations, we have said repeatedly they must look at the `totality of the circumstances' of each case to see whether the detaining officer has a `particularized and objective basis' for suspecting *366 legal wrongdoing. The process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person.' Although an officer's reliance on a mere `hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.
(Citations omitted).
In evaluating the "totality of the circumstances", evasive conduct in response to police presence is a factor that is accorded significant weight. State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048, 1050. The United States Supreme Court has recognized that the scope of the intrusion occasioned by an investigatory stop will vary to some extent with the particular facts and circumstances of the case. Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).
In certain cases, "reasonable suspicion" for an investigatory stop may develop into "probable cause" for arrest, depending upon the circumstances of the case. State v. Flagg, 99-1004 (La.App. 5 Cir. 4/25/00), 760 So.2d 522, 527-528, writ denied, 00-1510 (La.3/9/01), 786 So.2d 117.
Probable cause needed for a full custodial arrest, is more than reasonable suspicion. State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179, 1183. Probable cause exists when the facts and circumstances known to the arresting officer, based on reasonably trustworthy information, are sufficient to justify a belief in a man of ordinary caution that the person to be arrested has committed a crime. State v. Edwards, 00-1246 (La.6/1/01), 787 So.2d 981, 986, n. 4.
On appeal, defendant alleges that when Officer Cato took Parfait by the arm and led her to the police unit there was more than an "actual stop;" there was, in fact, an "arrest."
Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual and asking him if he is willing to answer some questions and by putting questions to him if he is willing to listen. State v. Lewis, 00-3136, p. 4 (La.4/26/02), 815 So.2d 818. It is only when the person is "actually stopped" without reasonable cause or when a stop without reasonable cause is "imminent" that the right to be left alone is violated, thereby rendering unlawful any resultant seizure. State v. Dobard, 01-2629, p. 6 (La.6/21/02), 824 So.2d 1127. The Supreme Court in Dobard, 01-2629 at p. 6, 824 So.2d at 1131, further defined when an "actual stop" occurs:
In State v. Tucker, 626 So.2d 707, 710 (La.1993), this Court, adopting the U.S. Supreme Court's pronouncement in California v. Hodari D, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), held that an individual has been `actually stopped,' i.e., seized for purposes of La. Const. art. 1, Sec. 5, when he submits to police show of authority or when he is physically contacted by the police.
Not every physical contact between an officer and a suspect is a seizure that constitutes an arrest. In Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), while the officer grabbed the defendant during an initial encounter, the United States Supreme Court found that, although there had been a "seizure," there had been no arrest at that time.
This Court, in the recent decision of State v. Graham, 01-1232 at p. 10 (La.5/29/02), 820 So.2d 1101 (citing State v. *367 Fisher, supra), discussed in detail, what constitutes an "arrest:"
An arrest is `the taking of one person into custody by another [through] actual restraint [that] may be imposed by force or may result from submission of the person arrested to the custody of one arresting him.' Whether a person has been arrested is determined by an objective test; neither the person's subjective impression nor the lack of formality of the arrest resolves the issue.
The determination of whether an arrest occurred depends on the totality of the circumstances, but several factors distinguish an arrest from lesser infringements on personal liberty. A prime characteristic of any Fourth Amendment seizure of a person is whether, under the totality of the circumstances, a reasonable person would not consider himself or herself free to leave. Ultimately, whether a person has been arrested depends on circumstances indicating an intent to impose an extended restraint on the person's liberty.
An arrest occurs when the circumstances indicate an intent to effect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. An arrest made without probable cause is illegal and the seizure of evidence pursuant to an illegal arrest is also illegal.
At the very least, based on the totality of the circumstances, Officer Cato had reasonable suspicion to stop Parfait and her male companion and briefly question them concerning the commission of an offense. Upon questioning Parfait and her companion, Officer Cato's initial suspicion was further heightened. She found the male subject to be intoxicated. More importantly, Parfait acted evasively in that she refused to give her name to Officer Cato and tried to deceive Officer Cato concerning her relationship with the male suspect. Thereafter, Parfait attempted to leave the scene, before Officer Cato had completed the investigatory stop. Officer Cato articulated specific facts that constituted reasonable suspicion to justify an investigatory stop.
Moreover, a pat-down for weapons was justified to insure Officer Cato's safety. It was 10 o'clock at night. Officer Cato was acting alone at the scene with two apparently hostile people. Under these circumstances, Officer Cato was justified in separating the two antagonistic subjects for purposes of the pat-down search. Additionally, since Parfait had just attempted to flee, Officer Cato was justified, under the circumstances, in taking Parfait by the arm and guiding her to the police unit for the pat-down for weapons. Such an intrusion, under these circumstances, does not appear to constitute an "arrest." There is nothing in the record to indicate that Officer Cato, at the time she touched the subject, had any intent to impose an extended restraint on Parfait's liberty. To the contrary, Officer Cato clearly indicated that she normally does not arrest persons guilty of such misdemeanor offenses. Moreover, although the subject was briefly stopped, there is also no indication she was "physically or forcibly detained" or otherwise "compelled to stay." State v. Butler, 01-0907 (La. App. 5 Cir, 2/13/02), 812 So.2d 120, 126.
Under these circumstances, it appears a lawful investigatory stop founded on reasonable suspicion occurred. The degree of force used to effectuate the stop was proportionate to the circumstances present at the time of the stop. The inculpatory statement made by Parfait during the lawful stop provided Officer Cato probable cause for Parfait's arrest and seizure of the contraband. Therefore, it appears *368 the trial judge did not err in denying Parfait's motions to suppress the statement and evidence. We agree with the trial court and affirm the denial of the motions.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant contends that the evidence was insufficient to convict her of the charged offense, because the State failed to prove specific intent to possess a controlled dangerous substance.
In this case, challenging the sufficiency of the evidence, this Court must decide whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 82. In applying this standard, the reviewing court will not access credibility nor reweigh the evidence. State v. Rosiere, 488 So.2d 965, 968 (La. 1986). The trier of fact shall evaluate credibility and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27, 35. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. State v. Stec, 99-633 (La.App. 5 Cir. 11/30/99), 749 So.2d 784, 787.
The defendant in this case was convicted of attempted possession of a controlled dangerous substance, Hydrocodone. LSA-R.S. 40:967(C) provides in pertinent part as follows:
C. Possession. It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, as provided in R.S. 40:978 while acting in the course of his professional practice or except as otherwise authorized by this Part.
Hydrocodone is a Schedule II controlled dangerous substance as defined by LSA-R.S. 40:964(A). An "attempt" is defined by LSA-R.S. 14:27, as follows:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
. . . .
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such an attempt.
"Actual possession" means having an object in one's possession or on one's person in such a way as to have direct physical contact with and control of the object. State v. Walker, 32,342 (La.App. 2 Cir. 9/24/99), 747 So.2d 133, 138. The fact finder may draw reasonable inferences based upon the evidence presented at trial to support contentions of knowledge and intent. State v. Gentras, 98-1095 (La.App. 5 Cir. 3/30/99), 733 So.2d 113, 117, writ denied, 99-1302 (La.10/15/99), 748 So.2d 464; State v. Porter, 98-2280 (La.App. 4 Cir. 5/12/99), 740 So.2d 160, 162.
*369 In this case, the defendant was found in "actual possession" of seven pills of Vicodin. Defendant's knowledge that she possessed the controlled substance could be inferred from her initial statement to the investigating officer that the pills were in her pocket. Her intent with regard to the controlled substance was not as clear because the defendant told the arresting officer that she had a prescription for the controlled substance and had lost it in a vacant lot. No prescription bottle was found in the vacant lot where defendant alleged she lost her purse with the prescription bottle. The defendant's mother testified that the pills were her prescriptive medication that was held by her daughter, because she was elderly and ill and her daughter took care of her. When faced with these apparently conflicting facts, a jury could have reasonably found that the defendant attempted to possess the controlled substance for her own use.
Under these circumstances, we find that a rational trier of fact could have found that the State proved the essential elements of the crime of attempted possession of Hydrocodone beyond a reasonable doubt.
For these reasons, we affirm the defendant's conviction of attempted possession of Hydrocodone.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals no errors patent in this case.
In accordance with the above reasons, we affirm the denial of defendant's motions to suppress and affirm defendant's conviction of attempted possession of Hydrocodone.
AFFIRMED.