858 So.2d 8 (2003)
STATE of Louisiana
v.
Dameon J. ENCLADE.
No. 03-KA-353.
Court of Appeal of Louisiana, Fifth Circuit.
September 16, 2003.
*10 Paul D. Connick, Jr., District Attorney, Andrea F. Long, Terry M. Boudreaux, Kenneth Bordelon, Assistant District Attorneys, Gretna, LA, Counsel for State of Louisiana, Plaintiff/Appellee.
*11 Gwendolyn K. Brown, Louisiana Appellate Project, Baton Rouge, LA, Counsel for Dameon J. Enclade, Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, WALTER J. ROTHSCHILD, and EMILE R. ST. PIERRE, Pro Tempore.
EMILE R. ST. PIERRE, Judge Pro Tempore.
On February 9, 2001, Defendant, Dameon J. Enclade, was charged with possession with the intent to distribute MDMA in violation of LSA-R.S. 40:966(A). Defendant was arraigned on March 21, 2001 and entered a plea of not guilty. On April 19, 2001, Defendant filed pre-trial motions, including a Motion to Suppress Confession, Identification and Evidence. On November 29, 2001, the trial court heard and denied the motion.
On January 15, 2003, Defendant withdrew his prior plea of not guilty and entered a stipulated plea of guilty as charged, pursuant to the provisions of State v. Crosby,[1] 338 So.2d 584 (La.1976). The trial judge sentenced the defendant to five years of imprisonment at hard labor, suspended and ordered him to serve five years of active probation with special conditions. The court also imposed fees, fines and all costs. On January 16, 2003, defendant filed a timely written motion for a Crosby appeal, which was granted by the trial judge on January 21, 2001.
FACTS
On February 4, 2001, shortly after midnight, Officer Jeff Adams of the Kenner Police Department Patrol Division was driving in the 600 block of Vintage Street in Kenner in his marked patrol unit. Officer Adams observed a vehicle proceeding down the same street in the opposite direction pull into the parking lot of the Chateau Supermarket and park in a dark alley alongside the building. Due to a series of burglaries of small businesses in Kenner, Officer Adams became suspicious and decided to investigate. After calling for back-up assistance, Officer Adams pulled his patrol unit into the alley behind the Defendant's vehicle, turned on his spotlight, and approached the vehicle. As the officer approached, he noticed Defendant, the driver and lone occupant in the vehicle, digging at his feet near the vehicle's floorboard. At that point, the officer became concerned that Defendant had a gun and was attempting to hide it. The officer knocked on the window of the vehicle and asked Defendant for the vehicle's paperwork and inquired as to why he was at that location. According to Officer Adams, Defendant, who was stuttering and appeared to be very nervous, removed papers from the glove box, console, and between the seats and placed them on the ground near Officer Adams's feet.
Officer Adams testified that, as a safety precaution, he asked the Defendant if he would consent to have his hands cuffed in front of him before exiting the vehicle, to which Defendant agreed. After being handcuffed, the Defendant stepped out of the vehicle. Officer Adams testified that the Defendant was not under arrest at that time and was free to leave.
Officer Jill Farrell testified that she arrived in response to Officer Adams's previous call for backup assistance and observed Defendant standing at the rear of his vehicle. Officer Adams asked her to watch the subject while he checked the *12 vehicle for a weapon. According to Officer Farrell, Defendant was fidgety. Unable to find a weapon in the vehicle, Officer Adams returned and asked Defendant if he had a gun to which Defendant gave a negative response. Officer Adams conducted a pat down for weapons and found none. Thereafter, Officer Farrell suggested that Defendant may be hiding something in his shoe. According to Officer Farrell, upon hearing this Defendant asked the officers if they wanted "to check" his shoes. Officer Farrell responded that she would like to do so. When Defendant removed his shoe, Officer Farrell noticed Defendant step on something on the ground. Upon closer examination, Officer Farrell observed a small blue plastic bag on the ground which she suspected contained illegal narcotics. The two officers secured Defendant and ordered him to remove his other shoe, wherein they found approximately fifty small blue bags, some of which contained colored tablets marked with various designs. Defendant was subsequently detained and placed in the rear of the patrol unit.
Narcotics Detective William Sandino of the Kenner Police Department testified that he was called to the scene at the 600 block of Vintage. Detective Sandino tested the tablets which proved positive for methamphetamines. According to Detective Sandino, Defendant indicated that he wished to speak to him. After being advised of his constitutional rights by Detective Sandino, Defendant informed the detective that he had purchased the drugs from a man in Mississippi for $18-$19 per tablet and was going to sell them for $20 to 25 per tablet. The confession was overheard by Officer Farrell. Thereafter, Defendant was transported to the police lockup for booking. A search of his person during the booking process revealed he was in possession of $840 in cash.
At the suppression hearing, Defendant testified and refuted the officers' testimony. He explained that the money in his possession at the time of his arrest was money paid to him for performing his job as an alarm installer. He indicated that, on the night of his arrest, he did not agree to be handcuffed; rather, he asked why he was being handcuffed and got no response. According to Defendant, his hands were cuffed behind his back and not in front as the officers had indicated. Defendant also testified that he was told to remove his shoes, and when he was unable to do so, Officer Farrell helped in their removal. He testified the scene was well lit on that night. He also stated that he was pulled over for a broken taillight on his vehicle but he was not given a traffic ticket and he did not know why he was arrested.
ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends the trial court erred in refusing to grant his motion to suppress evidence and confession because the evidence implicating him was obtained as the result of an illegal stop and arrest. The State responds that the evidence and confession were properly found to be admissible because they were the result of a legal investigatory stop based upon reasonable suspicion of criminal activity and that Defendant was not arrested until after the contraband was lawfully discovered.
The Fourth Amendment of the United States Constitution and Article I, Section 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. State v. Manson, 01-159, pp. 6-7 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 755. Warrantless searches and seizures are unreasonable per se, unless justified by one of the specific exceptions to the warrant requirement. State v. Manson, 791 So.2d at 757 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, *13 36 L.Ed.2d 854 (1973)). Consent to search is one of the clearly recognized exceptions to a warrantless search. Schneckloth v. Bustamonte, supra; State v. Wilson, 467 So.2d 503 (La.1985), cert. denied, Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985), reh'g denied, 474 U.S. 1027, 106 S.Ct. 585, 88 L.Ed.2d 567 (1985).
When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the State bears the burden of proving that the search and seizure was justified pursuant to one of the exceptions to the warrant requirement. State v. London, 01-1016 (La.App. 5 Cir. 3/13/02), 815 So.2d 162, 164, writ denied, 02-1567 (La.5/30/03), 845 So.2d 1067; State v. Jones, 99-972, p. 6 (La.App. 5 Cir. 2/29/00), 757 So.2d 110, 112, writ denied, 00-1186 (La.9/21/01), 797 So.2d 58.
In reviewing the ruling on the motion to suppress, the appellate court will look to the totality of the evidence, taking into account the inferences and deductions of a trained police officer. State v. Wilson, 00-0178, p. 3 (La.12/8/00), 775 So.2d 1051, 1053; State v. Manson, supra. The trial judge's determination on the motion to suppress will not be disturbed on appeal unless it is clearly wrong. State v. Casey, 99-0023, p. 12 (La. 1/26/00), 775 So.2d 1022, 1029, cert denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). The credibility of witnesses at the suppression hearing is within the discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness, and such credibility determinations will not be reweighed on appeal. State v. Calvert, 01-826, p. 7 (La.App. 5 Cir. 2/26/02), 811 So.2d 1081, 1084.
Defendant initially argues that Officer Adams had no reasonable basis to support the stop and therefore any evidence seized pursuant to the stop was not lawfully obtained. The constitutional protections against unreasonable search and seizure also extend to brief investigatory stops that fall short of traditional arrests. United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002). A police officer may briefly seize a person during an investigatory stop if he has an objective reasonable suspicion, supported by specific and articulable facts, that the person is or is about to be engaged in criminal conduct or is wanted for past criminal acts. LSA-C.Cr.P. art. 215.1; State v. Graham, 01-1232, p. 7 (La.App. 5 Cir. 5/29/02), 820 So.2d 1101, 1106, writ denied, 02-1770 (La.12/19/02), 833 So.2d 329. Reasonable suspicion for an investigatory stop is something less than probable cause, and rests upon the "totality of the circumstances" of each case. United States v. Arvizu, 122 S.Ct. at 750-751; State v. Thompson, 02-333, (La.4/9/03), 842 So.2d 330, 335. In evaluating the "totality of the circumstances," evasive conduct in response to police presence is a factor that is accorded significant weight. State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048, 1050. Defendant's presence in a known crime area, coupled with nervousness, startled behavior or suspicious actions upon the approach of a police officer is sufficient to justify an investigatory stop. State v. Hill, 01-1372, p. 8 (La.App. 5 Cir. 5/15/02), 821 So.2d 79, 83; State v. Duckett, 99-314, p. 7 (La.App. 5 Cir. 7/27/99), 740 So.2d 227, 230.
The record indicates it was shortly after midnight when Officer Adams observed Defendant pull into a parking lot alongside the closed grocery store. Aware of a rash of burglaries of small businesses in the Kenner area, Officer Adams decided to investigate. Upon approaching Defendant's vehicle, he observed Defendant digging at his feet or the floor board of the vehicle. Officer Adams feared Defendant *14 had a weapon and was trying to hide something. Further raising the officer's concern was that Defendant appeared very nervous and was stuttering when he spoke with Officer Adams concerning his reasons for being at that location.
Considering the defendant's presence at night in an alley adjacent to a closed business in an area known for business burglaries, coupled with his palpable nervousness and furtive actions upon the approach of the officer, Officer Adams had objective reasonable suspicion, supported by specific and articulable facts necessary to engage in an investigative stop. LSA-C.Cr.P. art. 215.1; State v. Graham, supra; See State v. Pell, 584 So.2d 1186 (La.App. 2 Cir.1991). Additionally, the facts that Officer Adams was alone in a relatively poorly lit area when added to defendant's furtive actions in digging at his feet and the vehicle's floorboard provided an objective reasonable basis for the officer to conduct a self-protective search for weapons. A reasonably prudent man in these circumstances would be warranted in the belief that his safety was in danger. See State v. Dumas, 00-862, p. 4 (La.5/4/01), 786 So.2d 80, 82.
Consequently, Officer Adams had reasonable suspicion to make an investigatory stop of Defendant. Defendant, however, alleges that, being handcuffed, it was tantamount to an "arrest," and the resultant seizure of evidence and his confession were illegal because the arrest was made without probable cause.
It is only when the person is "actually stopped" without reasonable cause or when a stop without reasonable cause is "imminent" that the right to be left alone is violated, thereby rendering unlawful any resultant seizure. State v. Tucker, 626 So.2d 707, 710-711 (La.1993); State v. Dobard, 01-2629, p. 6 (La.6/21/02), 824 So.2d 1127, 1130. "Not every physical contact between an officer and a suspect is a seizure that constitutes an arrest." State v. Parfait, 02-348 (La.App. 5 Cir. 10/16/02), 831 So.2d 360, 366 (citing Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "The United States Supreme Court has recognized that the scope of the intrusion occasioned by an investigatory stop will vary to some extent with the particular facts and circumstance of the case." State v. Parfait, 831 So.2d at 366 (citing Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)).
In the recent Louisiana Supreme Court decision of State v. Adams, 01-3231, pp. 5-6 (La.1/14/03), 836 So.2d 9, 12, a female subject was handcuffed and detained by a male police officer pending the arrival of a female officer, who was to conduct a narcotics search. The Court found the actions did not constitute an arrest and discussed the implications of handcuffing a suspect during an investigatory stop:
We have previously recognized that the use of handcuffs is ordinarily associated with an arrest, an extended restraint on liberty, and not with an investigatory stop, a comparatively lesser intrusion on an individual's freedom and privacy interests. State v. Broussard, 00-3230, pp. 3-4 (La.5/24/02), 816 So.2d 1284, 1287 ("Brevity alone does not always distinguish investigatory stops from arrests, as the former may be accompanied by arrest-like features, e.g., use of drawn weapons and handcuffs, which may, but do not invariably, render the seizure a de facto arrest.") (citing United States v. Acosta-Colon, 157 F.3d 9, 18-19 (1st Cir.1998)). Nevertheless, particular circumstances may reasonably warrant such measures. United States v. Melendez-Garcia, 28 F.3d 1046, 1052 (10th Cir.1994) (government must show that "the facts available to the officer *15 would warrant a man of reasonable caution in the belief that the action taken was appropriate.") In the present case, we find that the handcuffing of respondent to maintain the status quo during a detention which lasted no more than 15 minutes until the female officer arrived constituted a reasonable response to the situation that did not turn an otherwise valid investigatory stop into a de facto arrest.
As discussed above, Officer Adams was alone at night when he approached Defendant's vehicle. As he neared the vehicle, Officer Adams observed Defendant digging at his feet near the vehicle's floorboard, which caused Officer Adams to be concerned that Defendant had a gun. After speaking with Defendant, Officer Adams became further concerned Defendant had a weapon after witnessing Defendant's nervous behavior. As a safety precaution, Officer Adams asked Defendant if he would consent to having his hands cuffed. Defendant agreed. Considering the totality of the circumstances, Officer Adams was justified in his decision to handcuff Defendant as a safety precaution; those actions did not rise to the level of an arrest. See, State v. Gray, 99-47, p. 9 (La.App. 5 Cir. 6/1/99), 738 So.2d 668, 671.
Defendant also argues that the seizure of evidence and confession resulted from an illegal arrest, which was not based on probable cause and should have been suppressed. Having found that Officer Adams made a valid investigatory stop based on reasonable suspicion rather than an arrest, Defendant's argument fails. However, despite the existence of a valid investigatory stop and subsequent search of Defendant's vehicle and person for weapons, the seizure of the narcotics in the instant case must have been supported by a warrant, probable cause, or an exception thereto. See, Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); State v. Cooper, 36,472 (La.App. 2 Cir. 10/23/02), 830 So.2d 440.
Oral consent is sufficient to constitute an exception to the warrant and probable cause requirements of the federal and state constitutions. State v. Ossey, 446 So.2d 280 (La.1984), cert. denied, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984). When the State relies on consent to justify a warrantless search, it has the burden of proving the consent was freely and voluntarily given. State v. Williams, 98-1006, p. 19 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 72, writ denied, 99-1077 (La.9/24/99) 747 So.2d 1118. Voluntariness of consent is a question of fact which the trial judge is to determine based on the totality of the circumstances. Id. at 73. When the trial court is presented with conflicting testimony, the credibility of the witnesses is a matter within the sound discretion of the trier of fact and will not be disturbed unless clearly contradictory to the evidence. Id.
In this case, the State met its burden in proving Defendant freely and voluntarily consented to the search of his shoes. The trial court believed Officer Farrell's testimony in this regard and the record supports that finding. Once Defendant removed his shoes, revealing the contraband, the officers had probable cause to arrest Defendant and to seize the contraband. As such, the narcotics would have been admissible against Defendant at trial.
Additionally, Defendant's confession was also properly found to be admissible. In State v. Williams, 735 So.2d at 73-74, this Court discussed the State's burden for the admissibility of a confession:
Before the State may introduce a confession or statement for consideration by the jury, the State must prove beyond a *16 reasonable doubt that the statement or confession was free and voluntary and not made under the influence of fear duress, intimidation, menaces, threats, inducements, and promises.... If the statement is made during a custodial interrogation, the State must prove that the declarant was advised of his constitutional rights.... Custodial interrogation means "questioning initiated by law enforcement officers after a person has been deprived of his freedom of action in any significant way. Spontaneous and voluntary statements not given as a result of police interrogation or compelling influence, are admissible in evidence without Miranda warnings, even where a defendant is in custody."
. . . .
Voluntariness of the statement is to be determined in a case-by-case basis.... The trial judge's conclusions regarding the credibility and weight of the testimony relating to the voluntariness of the confession or statement will not be overturned unless they are not supported by the evidence.
(Citations omitted).
Defendant indicated he wanted to speak with Officer Sandino and the officer advised Defendant of his constitutional rights. Under these circumstances, the State met its burden of proving Defendant's confession was made knowingly and voluntarily.
For the reasons stated, we find the trial court's ruling, which denied the defendant's Motion to Suppress, to be correct.
This assignment is without merit.
The record was also reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
Upon review we note that the trial court did not indicate to defendant when the prescriptive period for filing post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8 began to run. Accordingly, we remand the matter to the trial court with an order to inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to him within ten days of the rendition of this Court's opinion, and to file written proof that defendant received the notice in the record. See, State v. Landry, 02-1242 (La.App. 5 Cir. 4/29/03), 845 So.2d 1233.
Accordingly, for the reasons herein, the conviction and sentence of defendant, Dameon J. Enclade, are affirmed and the matter remanded to the trial court for compliance with LSA-C.Cr.P. art. 930.8.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] At the time of the reservation of rights, defendant objected to the ruling on the motion to suppress but did not indicate this was the pre-trial ruling he reserved for appeal under Crosby. However, in this case the only pre-trial ruling was the ruling on the motion to suppress.