JUDE G. GRAVOIS, Judge.
| ¡After entering a guilty plea pursuant to State v. Crosby,[1] defendant, Brett Lem-onte, has appealed the denial of his Motion to Suppress. For the reasons that follow, we affirm defendant’s conviction, vacate defendant’s sentence, and remand the matter to the trial court for resentencing and for notification of the registration requirements of La. R.S. 15:542, as required by La. R.S. 15:543(A), reserving unto defendant the right to withdraw his guilty plea.

PROCEDURAL BACKGROUND

On October 29, 2010, the St. John the Baptist Parish District Attorney filed a bill of information charging defendant, Brett Lemonte, with pornography involving juveniles, a violation of La. R.S. 14:81.1(A)(3). Defendant pled not guilty at arraignment. On February 8, 2011, defendant filed a Motion to Suppress [^Statement and Evidence, claiming that the evidence in the instant case was unconstitutionally obtained pursuant to an unlawful search and seizure. A suppression hearing was held on October 19, 2011, after which the trial court denied defendant’s Motion to Suppress. Subsequent to rendering its ruling, defendant filed an application for supervisory writs with this Court, challenging the trial court’s denial of his Motion to Suppress. This Court denied defendant’s writ application on January 6, 2012. State v. Lamonte, No. 11-1153 (La.App. 5 Cir. 1/6/12) (unpublished writ disposition).
On June 12, 2012, defendant withdrew his prior not guilty plea and entered a plea of guilty as charged under Crosby. Pursuant to the plea agreement, defendant was sentenced to seven years imprisonment with the Department of Corrections, with two years ordered to be served without the *1274 benefit of probation, parole or suspension of sentence. The trial court further suspended five of the seven years of imprisonment, and ordered that defendant be placed on active probation for a term of five years upon completion of his prison term. Defendant was also ordered to pay a $3,000.00 fine.
On June 27, 2012, defendant filed a Motion for Appeal which was granted by the trial court. Defendant now appeals the trial court’s denial of his Motion to Suppress.

FACTS

At the hearing on defendant’s Motion to Suppress, Senior Investigator Randall Gohn of the Louisiana Attorney General’s Office, High Tech Crime Unit, ICAC (Internet Crimes Against Children) Task Force, testified that he investigates child pornography and solicitation. In the course of his investigations, Mr. Gohn located a computer IP address containing numerous files of child pornography |4which were readily available to be freely traded. He subpoenaed records from the local telephone company to obtain the name and physical address for this computer’s IP address. Based on the address he obtained from the local telephone company, a search warrant was issued; however, upon execution of the warrant on September 7, 2010, the occupants of the house at the address on the warrant told the officers executing the warrant that they rented this property from a landlord who resided across the street.
The officers subsequently proceeded across the street and knocked on the door of the house they were directed to. Defendant answered the door. Mr. Gohn asked defendant to speak with him regarding an internet crimes investigation. Defendant stated that he would freely speak to the officers without an attorney being present. Mr. Gohn testified that at that time, he verbally advised defendant of his Miranda[2] rights. He also testified that sometime later, defendant was advised of his Miranda rights in writing from an Advice of Rights form which defendant signed and initialed. This form was introduced into evidence. Mr. Gohn asked defendant if he could search his computer and defendant agreed, giving both verbal and written permission. The Consent to Search form signed by defendant was also admitted into evidence. Defendant advised the officers that his computer was located in his bedroom. Mr. Gohn also testified that defendant was not threatened or promised anything in return for his cooperation, was not shackled or manhandled, and was not under arrest at the time of the interview.[3] Mr. Gohn further testified that at no time during the course of his visit at defendant’s home 15did it appear that defendant was under the influence of any mind altering substances, or that he did not understand what was happening.[4]
Mr. Gohn explained that Detective Wayne Lee of the St. Charles Parish Sheriffs Office, Cyber Crimes Unit, searched defendant’s computer, and that an analysis of defendant’s hard drive confirmed that his computer contained child pornography. Defendant then executed a voluntary writ *1275 ten statement which was witnessed by Mr. Gohn and signed by defendant. This statement was also admitted into evidence. According to Mr. Gohn, defendant admitted that he was the only person that used the subject computer, that he was the person who had downloaded the child pornography files, and that he was addicted to child pornography. Defendant was then advised that he was under arrest for violating La. R.S. 14:81.1(A)(3), possession and/or distribution of child pornography.[5] After a brief visit with his mother, defendant was transported to the parish prison.
On cross-examination, Mr. Gohn testified that he arrived at defendant’s house sometime in the morning, but could not recall the exact time. He acknowledged that both the Advice of Rights form and the Consent to Search form indicated a time of 6:45 a.m., which he believed to reflect the time defendant was orally advised of his rights; however, Mr. Gohn could not state with certainty the exact time he arrived at defendant’s house. Mr. Gohn also testified on cross-examination that defendant was asked general questions, such as his name, what he did for a living, and whether he lived at the subject residence, prior to the reading of his Miranda rights. Mr. Gohn further testified that he could not remember how |fimuch time had passed between verbally advising defendant of his rights and the presentation of the Advice of Rights form to defendant for his signature; however, Mr. Gohn indicated that it was after he had spoken to defendant for some time.
Detective Lee testified that he assisted Mr. Gohn in a forensic investigation of defendant’s computer which resulted in defendant’s arrest for child pornography. Detective Lee testified that he was present when Mr. Gohn read defendant his rights from a paper form he carries with him, and that the reading of his rights occurred prior to the commencement of any questioning. Specifically, Detective Lee testified on cross-examination that he observed Mr. Gohn sit down with defendant, read him the form, ask him if he understood his rights, and then advised defendant to read the form himself and sign. Detective Lee further testified that defendant’s demeanor did not suggest that he did not understand his rights, or that he did not understand why the officers were at his residence. Additionally, he stated that defendant never asked to speak to an attorney, nor did he indicate that he did not wish to answer the officers’ questions. Detective Lee testified that he was present when defendant signed the Consent to Search form. Detective Lee further testified that after obtaining defendant’s consent, defendant identified his bedroom for the officers, at which time Detective Lee conducted an examination of the computer’s hard drive. Numerous images of child pornography were found on the computer. Detective Lee testified that he had no further involvement in the investigation, and was not present when defendant drafted his statement.
The defense then called defendant’s neighbor, Kirt Robertson, to the stand. Mr. Robertson testified that on the date of the incident in question, he observed police vehicles arrive at defendant’s residence at 7:15 a.m.
*1276 17Piane Warner, defendant’s mother, also testified at the hearing on behalf of the defense. She lived with defendant at 144 East Tenth Street in Reserve. Mrs. Warner testified that on the day of defendant’s arrest, she received a phone call between 6:46 and 6:48 a.m. from her tenants informing her that the police had come to their house with a search warrant. After receiving this news, Mrs. Warner returned to her house, arriving at 7:25 a.m.; however, the officers would not let her inside the house. According to Mrs. Warner, an officer told her that defendant was not under arrest, and that he was cooperating. About an hour later, an officer came out of the house and told her that she could go in and “tell her son goodbye.” On cross-examination, Mrs. Warner stated that when she went into her house, “nothing was thrown out of place,” and that only defendant’s computer was taken.
Finally, defendant testified on his own behalf. He stated that the officers arrived at his house around 7:15 a.m. on September 7, 2010 and knocked on every door of the house. When he answered, the officers said that they had received a tip and wanted to talk about something going on. They did not mention child pornography. Defendant permitted the officers to enter his home, explaining that only Mr. Gohn was present in the living room when he was questioned, and that he did not see Detective Lee until Detective Lee went into his bedroom to retrieve his computer. Defendant further testified that Mr. Gohn asked him to show him his bedroom, and did not advise him of his Miranda rights. After showing Mr. Gohn his bedroom, defendant testified that Mr. Gohn went outside and retrieved Detective Lee who then went into his bedroom. Defendant testified that after Detective Lee entered his bedroom, he was handed paperwork that had already been filled out, and was told to sign the forms, which he did; the forms were then quickly pulled away. Defendant stated that neither the Advice of Rights form nor the Consent to Search form was ever read to him, and that he did not read the Lforms himself because they were pulled away quickly. Defendant stated that the officers told him that he was not under arrest, and he believed the officers when they told him that they were there to help him. Defendant further testified that he was intimidated by the officers because they had guns. Defendant explained that he executed the written statement because he was scared, and that Mr. Gohn told him what to write down. Defendant stated that had he been advised of his rights, he would not have spoken to the officers and would not have given the officers consent to search.
On cross-examination, defendant testified that he was twenty years old, that he had graduated from high school, attended Louisiana Technical College, and could read and write the English language. Defendant further testified that he understood what the word “consent” means, but did not read the consent form before signing it. Defendant also testified that the officers asked him if he had a computer, and then directed him to take them to where his computer was located, but never asked him if they could look at his computer. Defendant identified the Consent to Search form and the Advice of Rights form, and acknowledged that the signatures and initials on the forms were his. Defendant admitted that none of the officers ever pointed their guns at him, never threatened, manhandled, or hit him, and never promised him anything in exchange for his cooperation.
After defendant’s testimony, the State recalled Mr. Gohn to the stand. For a second time, Mr. Gohn testified that defendant was advised of his Miranda rights twice, and that he did not interrogate de *1277 fendant prior to advising him of his rights. According to Mr. Gohn, the first time he read defendant his rights was from memory and the second time was from a form. Mr. Gohn explained that when reading the Advice of Rights form to a suspect, he puts an “X” by every line that is read, and then the suspect is asked if he understood what was read to him, and if |9so, to initial next to each “X”. Mr. Gohn testified that he filled out everything, including each “X”, in defendant’s presence. Mr. Gohn also testified that defendant composed the written statement himself.
At the conclusion of the testimony, defense counsel argued to the court that there was a timing issue in this case. Defense counsel argued that the Advice of Rights form and the Consent to Search form reflect a time of 6:45 a.m.; however, contradictory testimony was presented which established that the officers did not arrive at defendant’s residence until 7:15 a.m. Thus, defense counsel asserted that the forms were filled out prior to the officers’ arrival and quickly placed in front of defendant to sign, giving credence to defendant’s testimony. Defense counsel reiterated that defendant testified that he was never advised of his rights, and since Miranda warnings were never given, defendant’s written statement should be suppressed. Defense counsel further argued that defendant’s consent to search was not freely given and the reason the officers prohibited defendant’s mother from entering the house was because she would have told defendant not to sign the Advice of Rights and Consent to Search forms.
After hearing the testimony and oral argument of counsel, the trial court denied defendant’s Motion to Suppress, specifically stating that he did not find defendant’s allegation that Miranda rights were never given to be credible. He further found that the consent was not “made under duress or with anything less than constitutionally protected levels being present.”
Following the trial court’s ruling, defendant filed a timely writ application with this Court challenging the denial of his Motion to Suppress. This Court denied relief, finding as follows:
The trial court’s ruling on the admissibility of a statement, and its conclusions on the credibility and weight of the testimony relating to the voluntariness of the confession or statement, are entitled to | ipgreat weight and will not be overturned unless unsupported by the evidence. State v. Franklin, 03-287, p. 4 (La.App. 5 Cir. 9/16/08), 858 So.2d 68, 70, writ denied, 03-3062 (La.3/12/04), 869 So.2d 817; State v. Parks, 08-423 (La.App. 5 Cir. 11/25/08), 2 So.3d 470, 481, writ denied, 09-0142 (La.10/2/09), 18 So.3d 101. Voluntariness of defendant’s consent to search is a question of fact to be determined by the trial judge from a review of the totality of the circumstances. State v. Isaacs, 95-173 (La.App. 5 Cir. 6/28/95), 658 So.2d 29, 32, writ denied, 95-1948 (La.1/5/96), 666 So.2d 299.
After review of the writ application and the attachments thereto, we cannot find that the court erred in denying the Motion to Suppress Statement and Evidence.
State v. Lamonte, No. 11-1153 (La.App. 5 Cir. 1/6/12) (unpublished writ disposition).
On appeal, defendant argues that the trial court erred in denying his motion to suppress. Defendant claims that after realizing the search warrant they obtained was not valid, the police used intimidation and coercion to obtain his consent to enter his residence and search his computer. Defendant contends that the police entered his house without a valid warrant and then coerced him into signing a partially completed Consent to Search form. Defen *1278 dant further asserts that he was not properly “Mirandized,” and that consent to search his computer was not constitutionally obtained prior to the officers performing the search. Additionally, defendant maintains that he was forced to answer questions without an attorney present. Defendant concludes that his Motion to Suppress should have been granted based on inconsistencies in the police report and the fact that officers were searching a different residence than the one listed in the warrant, without a valid exception to the warrant requirement.
In response, the State argues that the evidence obtained in this case was the result of an exception to the warrant requirement, namely, a valid consent to search. The State further maintains that the “law of the case” doctrine is applicable to this particular issue, where this Court previously found that the trial court did not err in denying defendant’s Motion to Suppress.

\ULAW AND ANALYSIS

Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda rights, that he voluntarily and intelligently waived his Miranda rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement or promises. La. R.S. 15:451; State v. Mollette, 08-138 (La.App. 5 Cir. 11/25/08), 2 So.3d 461, 467, writ denied, 09-155 (La.10/16/09), 19 So.3d 472. A determination of whether a waiver of constitutional rights was knowing and voluntary is made on a case-by-case basis, and such a determination rests upon the totality of the circumstances. State v. McGee, 04-963 (La.App. 5 Cir. 1/11/05), 894 So.2d 398, 407, writ denied, 05-593 (La.5/20/05), 902 So.2d 1050. There is a presumption against waiver which the State must rebut. Tague v. Louisiana, 444 U.S. 469, 471, 100 S.Ct. 652, 653, 62 L.Ed.2d 622 (1980). The State must specifically rebut the defendant’s allegations when claims of police misconduct in eliciting a confession are raised. State v. Blank, 04-204 (La.4/11/07), 955 So.2d 90, 103, cert. denied, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007).
The trial court’s admissibility of a statement, and its conclusions on the credibility and weight of the testimony relating to the voluntariness of the confession or statement, are entitled to great weight and will not be overturned unless unsupported by the evidence. State v. Allen, 06-778 (La.App. 5 Cir. 4/24/07), 955 So.2d 742, 752, writ denied, 08-2432 (La.1/30/99), 999 So.2d 754.
The Fourth Amendment of the U.S. Constitution and Article I, § 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. State v. Manson, 01-159 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 755, cert. denied, 01-2269 (La.9/20/02), 825 So.2d 1156. If evidence is derived from an unreasonable search or seizure, the proper remedy is to exclude the evidence from trial. State v. Boss, 04-457 (La.App. 5 Cir. 10/26/04), 887 So.2d 581, 585. It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable subject only to a few specifically established and well delineated exceptions. State v. Stone, 94-155 (La.App. 5 Cir. 7/26/94), 641 So.2d 652, 655, writ denied, 95-631 (La.1/6/97), 685 So.2d 129.
Consent to search constitutes one of the exceptions to the probable cause and warrant requirements of the Fourth Amendment when it is freely and voluntarily given by a person who possesses *1279 common authority over or other sufficient relationship to the premises or effects sought to be inspected. State v. Nicholas, 06-903 (La.App. 5 Cir. 4/24/07), 958 So.2d 682, 687. When the State relies on consent to justify a warrantless search, it has the burden of proving the consent was freely and voluntarily given. State v. Enclave, 03-353 (La.App. 5 Cir. 9/16/03), 858 So.2d 8, 15.
Voluntariness of a defendant’s consent to search is a question of fact to be determined by the trial judge from a review of the totality of the circumstances. Id. The factual determinations of the trial court on the issue of voluntariness of a consent to search are entitled to great weight on appellate review. Id. Furthermore, the trial court’s determination as to the credibility of witnesses is to be accorded great weight on appeal. Id.
In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. La.C.Cr.P. art. 703(D).
In this case, because the search warrant did not reflect defendant’s correct address, the officers who searched defendant’s residence did not utilize the warrant 11sto justify their search of defendant’s computer. Instead, at the hearing on the motion to suppress, Mr. Gohn testified that upon learning of defendant’s correct address, the officers knocked on defendant’s door and were greeted by defendant who allowed them into his home and voluntarily agreed to speak with them concerning their ongoing investigation. Mr. Gohn testified that prior to asking defendant any questions regarding the substance of the crime, he orally advised defendant of his Miranda rights. Mr. Gohn and Detective Lee both testified that defendant agreed to speak with them and was not threatened, coerced, or promised anything in return for his cooperation. The officers further testified that defendant understood his rights. The testimony indicates that defendant was then asked if he would give the officers permission to search his computer, and he agreed, providing both written and verbal consent to search prior to the officer’s retrieval of his computer.
Further, in addition to orally advising defendant of his Miranda rights, and verbally obtaining his consent to search his computer, both a Waiver of Rights form and a Consent to Search form were signed and initialed by defendant. Defendant then authored and signed a voluntary statement concerning the materials recovered.
At the suppression hearing, defendant provided conflicting testimony from that of the officers as to the events that occurred prior to his arrest. Defendant testified that no one advised him of his constitutional rights. He further claimed that he did not sign the Consent to Search form until after the officers had seized his computer, and that he did not have the opportunity to read the Advice of Rights and Consent to Search forms because they were quickly pulled away from him after his signature was obtained.
| |4A trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Flagg, 01-65 (La.App. 5 Cir. 7/30/01), 792 So.2d 133, 138, writ denied, 01-2534 (La.9/20/02), 825 So.2d 1159. In denying the motion to suppress, the trial judge specifically found the testimony of defendant that he was not advised of his Miranda rights to be not credible. Mr. Gohn specifically rebutted defendant’s allegations that he was not advised of his Miranda rights, i.e., that he signed the forms without reading them or *1280 being advised of their meaning, and that the Consent to Search form was not signed until after the computer was already-searched, explaining that each right was read to defendant and defendant initialed each right.
Moreover, although defendant alleges that the inconsistencies in the police report as to the time of the search should have “presented a constitutional red flag,” the alleged inconsistencies were explained at the motion hearing. Specifically, the forms at issue indicate a time of 6:45 a.m., which defense witnesses allege differ from the time officers arrived at defendant’s home. Mr. Gohn explained, however, that he did not check his watch when he -wrote down the time, and that he believed the time on the forms was reflective of the time at which defendant was orally advised of his rights. Additionally, the alleged inconsistencies would not vitiate consent because both Mr. Gohn and Detective Lee testified that regardless of the time documented on the forms, defendant was not interrogated about the alleged crime until after he was read his Miranda rights. The officers also testified that consent to search was obtained prior to conducting the search of defendant’s computer and before defendant executed the written statement. Mr. Gohn testified that defendant voluntarily agreed to cooperate with the officers, voluntarily signed the completed forms, and voluntarily made the written statement. Further [^defendant testified that he could read and write, graduated from high school, and was attending Louisiana Technical College.
Considering the totality of the factual circumstances involved in this case, and the law applicable to this case, as discussed above, particularly the jurisprudential rule that the trial court’s determination as to the credibility of witnesses on a motion to suppress is to be accorded great weight on appeal unless unsupported by the evidence, we find no error in the trial court’s denial of defendant’s Motion to Suppress. This assignment of error is accordingly without merit.

ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975).
As noted above, in conformity with his plea agreement, defendant was sentenced to seven years imprisonment with the Department of Corrections, with two years ordered to be served without the benefit of probation, parole or suspension of sentence. The trial court further suspended five of the seven years of imprisonment, and ordered that defendant be placed on active probation for a term of five years upon completion of his prison term. Defendant was also ordered to pay a $3,000.00 fine.
At the time of the commission of this offense, La. R.S. 14:81.1 provided, in pertinent part:
E. (1) Whoever commits the crime of pornography involving juveniles shall be fined not more than ten thousand dollars and be imprisoned at hard labor for not less than two years or more than ten years, without benefit of parole, probation, or suspension of sentence. (Emphasis added.)
|1fiIn State v. Sampognaro, 08-371 (La.App. 5 Cir.1/27/09), 9 So.3d 878, this Court held that suspension of sentence is not available under La. R.S. 14:81.1. In Sampognaro, this Court vacated the defendant’s sentence and remanded the matter for resentencing. Accordingly, pursuant to our holding in Sampognaro, we find that defendant herein received an illegally lenient sentence.
*1281 Under La.C.Cr.P. art. 882, this Court has the authority to correct an illegal sentence at any time despite the failure of either party to raise this issue on appeal. State v. Campbell, 08-1226 (La.App. 5 Cir. 5/26/09), 15 So.3d 1076, 1078, writ denied, 09-1385 (La.2/12/10), 27 So.3d 842. An illegally lenient sentence imposed pursuant to a plea bargain is an absolute nullity if the plea bargain has a negotiated sentence prohibited by law. Id. A defendant does not have a constitutional or statutory right to an illegal sentence. State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, 797.
Considering the foregoing, defendant’s illegal sentence, which is prohibited by law, is hereby vacated. Because defendant’s sentence was a part of his plea bargain, we remand this matter for resen-tencing in accordance with the law, reserving unto defendant the right to withdraw his guilty plea.
Further, defendant’s conviction of pornography involving juveniles pursuant to La. R.S. 14:81.1 is defined as a sex offense by La. R.S. 15:541(25)(e). La. R.S. 15:543 mandates that the trial court notify a defendant convicted of a sex offense in writing of the registration requirements for sex offenders set forth in La. R.S. 15:542. The record before us does not indicate that the trial court provided defendant with the required notification of the registration requirements of La. R.S. 15:542, as required by La. R.S. 15:543(A). Accordingly, in resentencing defendant, the trial court is instructed to comply with these requirements.
| ^CONCLUSION
For the foregoing reasons, defendant’s conviction is affirmed. Further, we vacate defendant’s sentence, and remand the matter to the trial court for resentencing and for notification of the registration requirements of La. R.S. 15:542, as required by La. R.S. 15:54S(A), reserving unto defendant the right to withdraw his guilty plea.

CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED WITH INSTRUCTIONS

. State v. Crosby, 338 So.2d 584 (La.1976). A Crosby plea is a guilty plea that is entered conditioned upon review of the denial of a pretrial motion or upon review of trial irregularities. At the time of the plea, the defendant should affirmatively reserve the right to seek review of the disputed issues; if the review is successful, the guilty plea may be withdrawn.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Because the house number contained on the original search warrant differed from defendant’s address, Mr. Gohn testified that it was not utilized to search defendant’s home.

.Also, on the Advice of Rights form, defendant initialed next to Mr. Gohn’s three handwritten entries at the top right hand corner confirming that he was not under the influence of drugs or alcohol, could read, write and understand English, and had a high school education.

. La. R.S. 14:81.1(A)(3) provides:
A. Pornography involving juveniles is any of the following:
[[Image here]]
(3) The intentional possession, sale, distribution, or possession with intent to sell or distribute of any photographs, films, videotapes, or other visual reproductions of any sexual performance involving a child under the age of seventeen.